John S. Lockman, J.
By the defendant’s motion for an inspection of the Grand Jury minutes and a dismissal of the indictment, the court is broached with what appears to be the novel issue of whether the signing of a blank Police Department fingerprint card in a name other than one’s given name constitutes the crime of forgery in the second degree.
The facts are not in dispute. The defendant pursuant to an arrest was brought to the Records Bureau of the Nassau County Police Department to be processed, that is, photo *268 graphed and fingerprinted. The defendant was presented with a blank fingerprint card on which he was asked to sign his name. The defendant did so in the name of Eddie Freeman in the presence of a police officer and the fingerprinting procedure was then completed. Upon comparison with the known fingerprints on record with the Nassau County Police and the Federal Bureau of Investigation, it was learned that the defendant’s real name was Lawrence Brown.
Forgery in the second degree, as it pertains to the instant indictment, is defined as follows: "A person is guilty of forgery in the second degree when, with intent to defraud, deceive or injure another, he falsely makes, completes or alters a written instrument which is or purports to be, or which is calculated to become or to represent if completed: * * * 3. A written instrument officially issued or created by a public office, public servant or governmental instrumentality”. (Penal Law, § 170.10, subd 3.)
The crime of forgery by its nature is determined by its definitional parameters. The first definitional hurdle to overcome is whether the document in issue is a "written instrument”. Subdivision 1 of section 170.00 of the Penal Law provides: "1. 'Written instrument’ means any instrument or article containing written or printed matter or the equivalent thereof, used for the purpose of reciting, embodying, conveying or recording information, or constituting a symbol or evidence of value, right, privilege or identification, which is capable of being used to the advantage or disadvantage of some person.”
The legislative intent underlying the above definition is revealed in the Commission Staff Notes (Gilbert Criminal Law and Procedure, 1974, p 2A-79), "The term 'written instrument’ (the subject of forgery) is broadly defined. It covers every kind of document and other item deemed susceptible or deceitful use in a 'forgery’ sense, the main requirement being only that it be 'capable of being used to the advantage or disadvantage of some person ’(subd. 1).” (Emphasis added.)
The primal consideration in the case at bar is whether the document in question, a blank fingerprint card, is capable of being used to the advantage or disadvantage of some person and thus fall within the definitional concept of a "written instrument”.
In this regard the defendant asserts that, "A fingerprint card is used for identification because fingerprints are intimately connected with a person, not a name. No matter what *269 name is signed to the card, even where no name signed, the result would be exactly the same. The check would show if a person with those prints had ever been previously arrested.”
Manifestly, the collation, categorization and comparison of a criminal suspect’s fingerprints represent an important aspect in law enforcement. However, a defendant’s fingerprint card is a distinct and singular record made significant not by the signing of a person’s name, but by the unique fingertip impressions appearing thereon.
It is apparent then that the value of such a fingerprint card depends not upon a name, be it real or fictitious, but rather upon an analysis of the fingerprint itself. Consequently, the defendant herein never possessed the capability of using such fingerprint card, signed with a fictitious name either to his own advantage, or to the disadvantage of the Police Department.
It is true that the signing of a fictitious name on a fingerprint card may cause a certain amount of inconvenience to the law enforcement agency recording such prints, but such conduct should not be sanctioned as criminal (People v Ketter, 76 Misc 2d 698; People v Gaissert, 75 Misc 2d 478).
It must be recognized that certain types of activity were never intended to be punishable under our traditional concepts of forgery. "Penal responsibility * * * cannot be extended beyond the fair scope of the statutory mandate” (People v Wood, 8 NY2d 48, 51; People v Sansanese, 11 NY2d 302). Therefore, the court finds that under the facts of this case, the fingerprint card in question is not a "written instrument” as defined by subdivision 1 of section 170.00 of the Penal Law and hence an essential element of the crime of forgery in the second degree has not been established. (People v Gottlieb, 36 NY2d 629.)
In view of the foregoing, it is not necessary for the court to reach the issues of whether the defendant had a right to refuse to sign the fingerprint card, or whether the proof submitted met the definitional requirements of the other elements of the crime (United States v Green, 293 F Supp 999).
Accordingly, the motion for inspection of the Grand Jury minutes and a dismissal of the indictment is granted upon an inspection of such minutes and upon a finding that the competent and admissible evidence before the Grand Jury was (a) legally insufficient and (b) did not provide reasonable cause to *270 believe that the defendant committed the crime charged (CPL 70.10; CPL 190.65, subd 1).