OPINION OF THE COURT
Philip J. Chetta, J.
The first branch of the defendant’s motion requesting the inspection and transcription of the Grand Jury minutes and dismissal of the indictment is granted to the extent that the court will examine the Grand Jury minutes.
The defendant, Joseph Pergolizzi, has been indicted for forgery in the second degree (Penal Law, § 170.10, subd 2), obstructing governmental administration (§ 195.05) and criminal impersonation (§ 190.25) based on the following facts:
On July 15, 1977, the defendant was arrested for the crime of petit larceny. The defendant gave his name to the police processing his arrest, as Joseph Simonetti. The defendant also signed the name Joseph Simonetti on a fingerprint identifica *530 tion card. Pursuant to procedure, a check under that name was conducted, and failed to reveal any prior criminal record or outstanding warrants. No record based on the defendant’s fingerprints had been secured at this time.* In reality, the defendant had a prior criminal record and an outstanding Nassau County bench warrant. When the check under the name of Joseph Simonetti indicated no prior record, he was issued an appearance ticket pursuant to CPL 150.20, which he also signed under the name of Joseph Simonetti. The defendant was told to appear on August 18, 1977, for arraignment. The defendant appeared for arraignment but failed to appear on the next adjourned date. (The absence being attributable to the defendant being incorrectly informed by his counsel as to the proper adjournment date.) Upon the defendant’s failure to appear in court, an inquiry made by the arresting officer resulted in the ascertainment of the defendant’s true name as Joseph Pergolizzi. The inquiry further revealed the outstanding Nassau County bench warrant.
Following the discovery of the defendant’s true name, he was indicted for the above-enumerated crimes, based upon his signing of the fingerprint identification card and the desk appearance ticket in the name of Joseph Simonetti.
The defendant contends that he cannot be prosecuted for forgery under the applicable statute since a fingerprint identification card and desk appearance ticket are not written instruments as defined under the Penal Law.
Section 170.10 (subd 2) states that:
"[a] person is guilty of forgery in the second degree when, with intent to defraud, deceive or injure another, he falsely makes, completes or alters a written instrument which is or purports to be, or which is calculated to become or represent if completed * * *
*531 "2. A public record, or an instrument filed or required or authorized by law to be filed in or with a public officer or public servant”.
Section 170.00 (subd 1) defines "written instrument” as "[A]ny instrument or article containing written or printed matter or the equivalent thereof, used for the purpose of reciting, embodying, conveying or recording information, or constituting a symbol or evidence of value, right, privilege or identification, which is capable of being used to the advantage or disadvantage of some person.”
The statutory definition of written instrument includes a broad range of material both written or printed. (See Practice Commentaries, McKinney’s Cons Laws of NY, Book 39, Penal Law, § 170.00, p 270.)
The issue in this case revolves around whether the material in question, the fingerprint identification card and the desk appearance ticket, are capable of being used to the advantage or disadvantage of some person. The defendant, relying on People v Brown (84 Misc 2d 267), contends that a fingerprint identification card does not meet the statutory definition of a written instrument. In Brown, the defendant signed a fingerprint card in the name of Eddie Freeman. Upon comparison with known fingerprints on record, it was learned that the defendant’s real name was Lawrence Brown. The court’s decision in Brown, holding that the fingerprint identification card is not capable of being used to the advantage or disadvantage of some person results from the court’s belief "that the value of such a fingerprint card depends not upon a name, be it real or fictitious, but rather upon an analysis of the fingerprint itself. Consequently, the defendant herein, never possessed the capability of using such fingerprint card, signed with a fictitious name either to his own advantage, or to the disadvantage of the Police Department.” (Brown, supra, p 269.)
The People contend that the fingerprint identification card does fall within the statutory definition of a written instrument, and cite People v St. Pierre (91 Misc 2d 783), to support this proposition.
In St Pierre, the defendant, following his arrest, signed a fingerprint identification card in the name of Kenneth Riley. Following his release from custody, the defendant’s true identity was learned and he was indicted for the crime of forgery in the second degree. The court in finding that the fingerprint *532 identification card fell within the statutory definition of a written instrument, determined that the card could be used to the advantage or disadvantage of some person.
"Where, as it is alleged herein, the defendant is arrested and gives a fictitious name, by signing the fingerprint card with the same name, he uses the card to his advantage to continue to perpetrate his scheme to conceal his true identity and possibly to hide a criminal record. The defendant’s actions, in view of the fact that it may take weeks for the police department to discover from the fingerprint records that the defendant has given a fictitous name, can result in the defendant’s release on either his own recognizance or on low bail when in fact, if his true identity were known, it might be discovered he is a predicate felon, a fugitive from justice or any other aggravating number of factors which would result in his detention or which would elevate the crime charged to a more serious offense.” (People v St. Pierre, supra, p 784.)
This court is in agreement with the St. Pierre holding and believes that the facts of the instant case reinforce its decision. In the case at bar, the defendant, following his arrest, gave his name as Joseph Simonetti and signed such on a fingerprint identification card. Following this, the police conducted a name check to determine whether the defendant had a prior criminal history or any outstanding warrants. Under the name given by the defendant, no prior record or warrants were discovered. The defendant was then issued a desk appearance ticket and released from custody. If the defendant had initially given the police his correct name, his prior criminal record and the outstanding warrant would have been discovered. It is the People’s contention, and there is no reason to doubt it, that if the police had been aware of the outstanding bench warrant and prior criminal record of the defendant he would not have been issued a desk appearance ticket. Thus, the defendant’s signing of the fingerprint card under the name of Joseph Simonetti, clearly was to his advantage. Accordingly, the court finds that the fingerprint identification card falls within the statutory definition of a written instrument.
The court must also determine whether the desk appearance ticket meets the statutory definition of a written agreement, since the defendant was indicted for a separate count of forgery relating to this item.
While the cited cases do not deal with this problem, the *533 court finds that the desk appearance ticket is also a written instrument for purposes of subdivision 1 of section 170.00 of the Penal Law. Clearly, the defendant’s signing of a false name to the desk appearance ticket, was to his advantage. If the defendant had signed his real name to the ticket, it would have conflicted with the name on the fingerprint identification card. The discrepancy would have immediately aroused the suspicions of the police with the probable consequence of the defendant’s true name, prior criminal record, and outstanding warrant being discovered. By signing the name of Joseph Simonetti to the desk appearance ticket, the defendant was able to continue to conceal his true identity, and hide his criminal record from the police and subsequently gain his release from custody.
The defendant further contends that the signing of the name Simonetti (the name of his stepfather) was not done with the intent to defraud. It is possible that the defendant had adopted, though not legally, the surname of his stepfather and that there was no intent on his part to conceal his prior criminal record and outstanding bench warrant. However, the question of intent to defraud is not for the court to decide at this time but is a determination that must be left to the triers of fact. (See People v Raymond, 249 App Div 121.)
The defendant further contends that "the signing of the fingerprint identification card and the desk appearance ticket do not constitute the type of activity embodied in the traditional concepts of forgery.”
The defendant states that "the forgery statute is aimed at instruments that would effect the flow of commerce and the pursuit of business.”
The court finds no merit in this contention. A reading of the forgery statute under which the defendant was indicted, subdivision 2 of section 170.10 of the Penal Law, reveals no such limitations. Indeed, the Practice Commentaries indicate that "Subdivision 1 [§ 170.00] defining instruments which may be subjects of forgery, is in the broadest of terms * * * [t]he revised provision restores the breadth of the common law crime by encompassing every document or other item susceptible of deceitful use in a forgery sense which is 'capable of being used to the advantage or disadvantage of some person’.” (Hechtman, Practice Commentaries, McKinney’s Cons Laws of NY, Book 39, Penal Law, § 170.00, p 270.) Prosecution for *534 forgery, under the facts of this case, is not at odds with the meaning and intent of the forgery statute.
Thus, having examined the Grand Jury minutes, the court finds sufficient legal evidence to have been adduced to sustain the indictment. Therefore, the defendant’s motion to dismiss the indictment is denied.
The second branch of the defendant’s motion challenging the wording of the indictment itself, is denied. It is sufficient if the indictment identifies the charges against the defendant so that his conviction or acquittal will prevent a subsequent charge for the same offense and it identifies to him the nature and the character of the crime charged so that he may prepare his defense. (People v Armlin, 6 NY2d 231; People v Farson, 244 NY 413; People v Nixon, 33 AD2d 403.) The indictment herein asserts facts supporting every element of the offense charged and clearly acquaints the defendant with the charges against him. If the defendant requires additional information to prepare his defense, his remedy is a motion for a bill of particulars.
The third branch of the defendant’s motion to dismiss the indictment on the grounds that the composition of the Grand Jury was improperly constituted is denied. The defendant is entitled to a jury which is not the product of systematic or deliberate or arbitrary discrimination or exclusion. The defendant has failed to demonstrate a purposeful pattern of discrimination in the selection of the panel or of its source. With respect to the compilation of the general list from which the jurors are drawn, see People v Chestnut (26 NY2d 481).

 The police procedure wherein a defendant is released from custody before an inquiry into his possible criminal history based on his fingerprints is conducted is consistent with the intent of the appearance ticket statute (CPL art 150). The issuance of a ticket to a defendant enables him to avoid an otherwise lengthly post-arrest procedure. To conduct a check for a possible criminal record based on the defendant’s fingerprints prior to his release would run contrary to the meaning and intent of the appearance ticket statute in that a defendant might remain in custody several hours or more before the results of the fingerprint search are secured by the arresting authorities.
However, it should be noted that normal police procedure in these situations involves other steps, albeit less time consuming, to ascertain the defendant’s true identity, place of residence and prior criminal history (if any such exists).