OPINION OF THE COURT
Fuchsberg, J.
This criminal case treats with the law of forgery in circumstances involving the use of an assumed name. It comes to us on an appeal from an order of the Appellate Division, which affirmed a judgment entered upon a verdict convicting the defendant, Charles Briggins, on two counts of criminal possession of a forged instrument in the second degree (Penal Law, § 170.25). The acts on which these were based involved his use of the name Garry Morris, both to secure a temporary motor vehicle operator’s permit and to apply for a permanent license. For the reasons which follow, we believe that under the *304 circumstances these documents were not the products of forgery within the contemplation of the statute and that, since a finding that they were was essential to the vitality of the charges on which defendant was found guilty, the convictions must fall.
Some factual recitation will aid our exposition. According to the uncontradicted testimony, Briggins, a Long Island resident whose regular occupation was that of New York City police detective, for reasons best known to himself was intent on keeping his supplemental earnings as a part-time clothing salesman from his wife. As he informed the jury, it was to that end that he adopted the additional name Garry Morris and associated with it the address of a co-operating friend. Among other things, he opened a checking account at the Long Island Trust Company under this identity. And, as it happened, it was three checks totaling $261.91 which he drew on that account, each to the order of a different storekeeper in payment for purchases he made át a Suffolk County shopping center, that eventuated in the prosecution and conviction now before us.
For, as defendant was leaving with the merchandise he had bought, he was accosted by a Suffolk County police officer, who, in his own off-duty employment, worked for the center as a security guard. This interception appears to have been precipitated by a complaint from one of the merchants who became suspicious of the defendant when, on further scrutiny of the check he had accepted, mistakenly as it turned out, thought that the blank on which it was made was a photostat rather than an original. In any event, the enusing confrontation between the two officers, in the course of which the defendant questioned the guard’s authority and resisted a demand that he surrender his purchases, turned out to be anything but peaceful. In short order, a scuffle had taken place, defendant was arrested, it was disclosed that his family name was Briggins rather than Morris, the driver’s permit and application were seized and, in due course, a multicount indictment on a host of theories was returned against him.[1] *305 All but the two with which we are here concerned having long since gone by the board, we now examine the scope of the term "forged instrument” as it is found in article 170 of the Penal Law.* [2]
On that score, we first note that the statutes define the felony of criminal possession of a forged instrument in the second degree to include the utterance or possession of a written instrument issued by or filed with a public office, public servant or government agency "with knowledge that it is forged and with intent to defraud, deceive or injure another” (Penal Law, § 170.10, subds 2, 3; § 170.25).
In breaking down this definition into its components, we read the phrase "written instrument” clearly to embrace the temporary permit and license application defendant procured and possessed. For the statute leaves no room for conjecture, expressly including "any * * * written or printed matter * * * used for the purpose of reciting, embodying, conveying or recording information, or constituting a symbol or evidence of value, right, privilege or identification, which is capable of being used to the advantage or disadvantage of some person” (Penal Law, § 170.00, subd 1). It can hardly be denied that the license is a "symbol” of the holder’s "right” to drive, that the application records the information needed by the motor vehicle authorities to issue a license and that each is issued by or filed with a public office. (Accord People v Campisi, 82 Misc 2d 254.)[3]
So narrowed, the question then becomes whether the instruments were forgeries. The search for the answer to that query well may start with section 170.00 of the Penal Law, under *306 which the concept of a forged instrument includes one that is "falsely made”, words which the section informs us are intended to cover a paper "which purports to be an authentic creation of its ostensible maker or drawer, but which is not such either because the ostensible maker or drawer is fictitious or because, if real, he did not authorize the making or drawing thereof’ (subds 4, 7). On its face this language appears to fit the garden variety of forgery, as when, for instance, the signature of the drawer of a check or the grantor of a deed has been counterfeited.
In signing the name Garry Morris, however, the defendant did not simulate, alter, erase or obliterate someone else’s signature. Instead, in handwriting that was undisguised, he merely used his adopted name, as a Samuel Clemens may have used the name Mark Twain or a Mary Ann Evans that of George Eliot. Nor did he do anything directly or indirectly to suggest that anyone but he was the "ostensible” signer and applicant or, for that matter, that the name Garry Morris was other than his own. In short, he did nothing that would cause one who relied on the instruments to believe that Garry Morris was the name of someone else, real or "fictitious”. Rather, he was unswerving in painting himself as the "ostensible maker or drawer”. Nevertheless, the People, insisting that the name Garry Morris must be regarded as "fictitious” within the intendment of the statute, would have us hold that defendant’s position is indistinguishable from that of one who has counterfeited a signature. Neither the history of the common law of forgery nor the logic of its present statutory formulation supports this argument.
The forged character of a document does not depend so much on whether it contains a falsehood, but on whether, on its face, it misrepresents its authenticity. To illustrate, suppose one other than the owner of real property unauthorizedly affixes the latter’s signature to a conveyance of title. The false signature then constitutes the deed a forgery since it, at least impliedly, represents that the instrument is genuine. But suppose the deed, though in fact signed by the grantor, materially misdescribes the parcel’s metes and bounds or mendaciously denies the existence of encumbrances. Then, whatever support the misrepresentation may give to a claim of fraud, a prosecution for forgery would not lie. (See, generally, Williams, Forgery and Falsity, 1974 Grim L Rev 71; *307 Perkins, Criminal Law [2d ed, 1969], pp 342-346; cf. People v Levitan, 49 NY2d 87.)
That is not to say that the signing of one’s own name to an instrument cannot be a forgery. While generally it is not illegal per se to adopt an alias or a nom de plume, freedom to do so reaches its limits when the practice is accompanied by a fraudulent design (see Ann., 49 ALR2d 852; 2 Wharton, Criminal Law [Anderson ed, 1957], § 630).
Let us take the case of a check drawn in the maker’s assumed name and indorsed, as payee, in his original name. This item is "falsely made” because any person to whom it is negotiated would assume that the maker is a party distinct from the payee. The reason it is punished as forgery is that others might expect that this third party existed and that his credit would stand behind the instrument along with that of the payee (see Hubsch v United States, 256 F2d 820, 823; Comment, 37 NC L Rev 200, 204). The facts being to the contrary, i.e., the existence of an additional person being a "fiction”, the result is that " 'the instrument * * * must be a false instrument in itself” (Dunn’s Case, 1 Leach CC 59, quoted by Lehman, J., in International Union Bank v National Sur. Co., 245 NY 368, 374 [forgery committed through fraudulent use of assumed names as drawers of checks and original name as their payee]).[4]
It is readily apparent that section 170.00, in deeming an instrument not "an authentic creation of its ostensible maker” when that maker is "fictitious” (subd 4), continues to reflect the thinking that emanates from these decisions and commentaries. Specifically, as suggested earlier, the manner in which defendant used the appellation Garry Morris falls without the statutory definition. For one thing, when an individual signs a name to an instrument and acknowledges it as his own, that person is the "ostensible maker”. Consequently, Charles Brig-gins was the ostensible maker of the license application, and he was certainly not fictitious. For another, this distinction is reinforced by the statute’s failure to proscribe mere use of a "fictitious name”.
*308 While the name Garry Morris was fictitious in the sense that it was not the one the defendant received at birth, in none of the dealings described at trial did he ever seek to disassociate himself from it or to deny that he was the person to whom it referred.[5] And, whatever the benefit or convenience he believed its use afforded him, there is no showing that he employed it as an instrument with which to unfairly impose on others. In other words, given the law’s general acquiescence in the use of an alter idem, be it for business, professional, theatrical or personal reasons, we cannot conclude that defendant’s consistent representation that the assumed name was his own manifested any "intent to defraud, deceive or injure another” (Penal Law, § 170.25). From all this we do not imply that a fraudulent use of a fabricated identity —i.e., a misrepresentation that a fictitious name refers to someone other than its creator — could not sustain a conviction for forgery, or, as charged here, possession of a forged instrument. Rather, we simply hold defendant’s conduct was devoid of that character.
This analysis does not depend on a hypertechnical consideration of the statutory language. The distinction between a fictitious name and a fictitious person is one well recognized by legal scholars (see, e.g., Williams, Forgery and Falsity, 1974 Grim L Rev 71, 75-77). Moreover, we have recently reaffirmed the importance of closely scrutinizing the facts of forgery cases to mark whether an "ostensible maker” and an "actual maker” are or are not separate entities (People v Levitan, 49 NY2d 87, supra).
Finally, far from suggesting radical alterations in the law, the legislative history describes the goal of the most recent reformulation of the forgery sections as no more than "condensation, clarification, and elimination of repetition and ambiguity” (NY Legis Doc, 1962, No. 41, p 17; see, also, NY Legis Doc, 1964, No. 14, p 24; Proposed NY Penal Law, Commission Staff Notes [Thompson Co., 1964], pp 360-361). In the same vein, it is instructive that a proposed amendment to the definition of "falsely make” that would have overruled the *309 time-honored treatment of fictitious names was rejected by the Legislature (see NY Legis Doc, 1966, No. 28, p 42).[6]
In sum, the proof in this case was insufficient to establish that the motor vehicle credentials which defendant applied for and obtained under his assumed name were forgeries. Accordingly, respect for the fundamental principle that a person cannot be found criminally liable for conduct which does not constitute a crime compels reversal of the order of the Appellate Division and dismissal of the indictment (see People v Case, 42 NY2d 98).

. The events surrounding the indictment became a local cause celebre, which saw the departmental disciplining of a second Suffolk County police officer for misappropriating $50 from the defendant when the latter was brought to the police station, a brutality complaint filed by the defendant against the Suffolk County police, a suit by the arresting officer against the defendant for "defamation of character”,' and a further suit for damages by the defendant against the county. The indictment’s 13 *305 counts, aside from those relating to the motor vehicle papers, incorporated, inter alia, ones for assault, forgery of the checks given to the merchants under the Garry Morris signature, larceny of the merchandise purchased with these checks, and for possession by him of four checks drawn to the order of Garry Morris. The three counts of forgery were dismissed by the trial court. Save for the motor vehicle counts, the jury found defendant innocent on all the rest.

. Defendant also presses a contention, rejected on the merits by a divided Appellate Division, that the method of seclection of the array from which his jury was chosen was not calculated to produce a fair cross section of the populace of Suffolk County in that it allegedly excluded nondrivers, blacks and persons between 18 and 20 years of age. In view of our disposition of the forgery issue, we have no occasion to reach this point.

. People v Sansanese (17 NY2d 302), on which the defendant places particular reliance to support an argument to the contrary, is not persuasive authority in this context. Although it too involved a driver’s license, it was decided under the old Penal Law, which did not contain the specific definitions now in effect.

. The quote from Dunn’s Case continues: "and that if a person give a note entirely as his own, his subscribing it by a fictitious name will not make it a forgery, the credit there being wholly given to himself, without any regard to the name, or any relation to a third person”. The trial court’s dismissal of the three counts founded on the checks the defendant issued at the shopping center would be consistent with this rationale.

. The People, though recognizing that their case might be strengthened by evidence that defendant ever used the name Garry Morris as anything other than his own or that he sought to trade on the credit of another person who carried that name, concede in their supplemental brief that they "did not prove, that the appellant actually knew a real person named Garry Morris.”

. This proposal would have added to subdivision 4 of section 170.00 of the Penal Law the following language: "When a written instrument does not purport to be the act of a person other than the actual maker or drawer thereof but is made or drawn by the latter not in his true name but in a fabricated or assumed name, the 'ostensible maker’ thereof is 'fictitious’ and is no less so because some other person rightfully bearing that name happens to be in existence.” By focusing on the use of an assumed name nonetheless acknowledged by the actual maker, this provision would appear to have been structured to criminalize a defendant’s scheme to create a new identity no matter how innocent its purpose.