■ THE PEOPLE OF THE STATE OF NEW YORK, Appellant, v THERESA KIRK, Respondent.—Appeal by the People from an order of the County Court, Suffolk County (Sherman, J.), dated January 23, 1985, which granted the defendant's motion to dismiss the indictment against her for forgery in the second degree.

Order reversed, on the law, indictment reinstated, and matter remitted to the County Court, Suffolk County.

Defendant was charged with one count of forgery in the second degree (Penal Law § 170.10) by the Suffolk County Grand Jury. The indictment alleged that on May 24, 1984, defendant "falsely completed" a fingerprint card by signing it with a name other than her own, to wit, her sister's name. Thereafter, on December 13, 1984, she moved to dismiss said indictment on the ground that signing a fingerprint card with a false name does not constitute the crime of forgery in the second degree. The County Court agreed and dismissed the indictment, concluding that the card was not a "written instrument" within the purview of the forgery statute because the use of a fingerprint card signed with a third person's name "does not work to the advantage or disadvantage of anyone". We now reverse.

For the purpose of prosecution pursuant to New York's forgery statutes, the term "written instrument" is defined by Penal Law § 170.00 (1) as follows: " 'Written instrument' means any instrument or article containing written or printed matter or the equivalent thereof, used for the purpose of reciting, embodying, conveying or recording information, or constituting a symbol or evidence of value, right, privilege or identification, which is capable of being used to the advantage or disadvantage of some person."

The definition has been recognized as a very broad one (see, People v Gottlieb, 36 NY2d 629, 632), and thus the crime of forgery has been held to encompass both falsified mail-order subscriptions (People v Hacken, 56 Misc 2d 950) and a bogus driver's license (People v Campisi, 82 Misc. 2d 254, affd 51 AD2d 595). A fingerprint card, signed with another person's name, also comes within the purview of a "written instrument" for forgery purposes because it can be used to the advantage or disadvantage of someone. Indeed, contrary to defendant's contentions, a criminal suspect gains a very real advantage when he signs the name of another to such a card,

because he is thereby able to at least temporarily hide from the authorities his prior criminal history and his true identity. As other courts have noted, a false signature could reasonably lead the authorities to conclude that a suspect has no past criminal record and, as a consequence, he might be released on his own recognizance or upon very low bail *(see, People v Pergolizzi,* 92 Misc 2d 528; *People v St. Pierre,* 91 Misc 2d 783). Moreover, a suspect with no criminal history who falsely signs a fingerprint card might gain the advantage of having his prints recorded in the name of the other person, thus hampering his identification by the police in future investigations based solely upon the presence of his fingerprints at the scene of the crime *(see, People v St. Pierre, supra).* We therefore find that the County Court erred in dismissing the indictment.

Finally, we note that the sole issue considered by the County Court in dismissing the indictment, and the sole issue addressed by the parties on this appeal, is whether a fingerprint card constitutes a "written instrument" within the meaning of Penal Law § 170.00 (1). Thus, the further issue addressed by our dissenting colleague, i.e., whether the fingerprint card was falsely made or falsely completed so as to constitute a forgery *(see,* Penal Law § 170.00 [4], [5]; *see also, People v Briggins,* 50 NY2d 302), is beyond the proper scope of this appeal. Lazer, J. P., Bracken and O'Connor, JJ., concur.

Brown, J., dissents and votes to affirm the order dismissing the indictment, with the following memorandum: The principal issue presented on this appeal (and in *People v Bigus,* 115 AD2d 751) is whether one who signs a fingerprint card using a name other than his or her own may be convicted of the crime of forgery in the second degree. Specifically, in the instant case the defendant was charged with the crime of forgery in the second degree (Penal Law § 170.10 [2]) based upon her having signed a name other than her own—to wit, her sister's name—to a fingerprint card while being processed after her arrest on other charges.

The crime of forgery in the second degree (Penal Law § 170.10) to the extent relevant herein, is defined as follows:

"A person is guilty of forgery in the second degree when, with intent to defraud, deceive or injure another, he falsely makes, completes or alters a written instrument which is or purports to be, or which is calculated to become or to represent if completed * * *

"2. A public record, or an instrument filed or required or authorized by law to be filed in or with a public office or public servant".

The County Court concluded—in my view, correctly—that a fingerprint card is not a "written instrument" within the meaning of Penal Law § 170.00. Said section defines that term as follows: "1. 'Written instrument' means any instrument or article containing written or printed matter or the equivalent thereof, used for the purpose of reciting, embodying, conveying or recording information, or constituting a symbol or evidence of value, right, privilege or identification, which is capable of being used to the advantage or disadvantage of some person".

As the County Court pointed out, "the fingerprint card is used for the classification and identification of the fingerprints imprinted thereon * * * [and] the value of the fingerprint card depends, not upon a name, whether real or fictitious, but upon an analysis of the fingerprint itself". The use of a fictitious name on the fingerprint card does not in any manner prevent the classification of those fingerprints according to type and shape, and does not prevent the police from matching those fingerprints with their files to determine the identity and past history of the person to whom they belong. A person's fingerprints are unique, and that is the significant information on the fingerprint card, not the name which the person has chosen to proffer at the moment. The fundamental information on the fingerprint card, the fingerprint itself, was true and accurate. In placing her fingerprints on the card an arrestee cannot falsify that significant information so as to portray the fingerprints of another individual and thereby gain an advantage in concealing her identity (see, People v Brown, 84 Misc 2d 267). While an arrestee's lack of cooperation by providing a fictitious name may prove inconvenient to the police, I am not prepared to conclude that such act constitutes criminal conduct (People v Brown, supra; People v Ketter, 76 Misc 2d 698; People v Gaissert, 75 Misc 2d 478). The conduct of the defendants here and in People v Bigus (supra), while no doubt devious, is not the type of activity which is generally punishable under traditional concepts of forgery (see, People v Sansanese, 17 NY2d 302), nor does it fall within the fair import of the forgery statute. Penal responsibility should not be extended beyond the statutory mandate (People v Wood, 8 NY2d 48), and I conclude that the Legislature never intended that the penal sanctions for forgery in the second degree should extend to this type of conduct. Therefore, I would agree with the County Court that a fingerprint card is not a written instrument within the meaning of Penal Law § 170.00.

Moreover, aside from any question as to whether a finger-

print card constitutes a written instrument under the statute, there is in my mind an issue as to whether defendant Kirk falsely completed that instrument as the indictment herein charges. The term "falsely complete" means that a person "by adding, inserting or changing matter * * * transforms an incomplete written instrument into a complete one, *without the authority of anyone entitled to grant it,* so that such complete instrument appears or purports to be in all respects an authentic creation of or fully authorized *by its ostensible maker* or drawer" (Penal Law § 170.00 [5]; emphasis added). It is clear in this case that defendant did not complete the fingerprint card without authority. Indeed, defendant, who had placed her fingerprints upon the card, was not only authorized to complete the fingerprint card but, apparently, was directed to do so by the police. Nor does the evidence support a finding that the card was completed such that it *appeared or purported to be in all respects an authentic creation of or fully authorized by its ostensible maker.* The defendant was the ostensible maker and it was her authorized authentic creation. As has been noted, "when an individual signs a name to an instrument and acknowledges it as his own, that *person* is the 'ostensible maker' " *(People v Briggins,* 50 NY2d 302, 307; *see also, People v Levitan,* 49 NY2d 87, 91).

Similarly, I find that the facts at bar do not support a finding that defendant is guilty of falsely making the instrument. The term "falsely make" is defined by the statute (Penal Law § 170.00 [4]) as follows: "4. 'Falsely make.' A person 'falsely makes' a written instrument when he makes or draws a complete written instrument in its entirety, or an incomplete written instrument, which purports to be an authentic creation of its ostensible maker or drawer, but which is not such either because the ostensible maker or drawer is fictitious or because, if real, he did not authorize the making or drawing thereof".

The entire issue of what constitutes a forgery and what is necessary to find that an instrument was falsely made is discussed in detail in *People v Briggins (supra).* In *Briggins* the defendant was convicted of two counts of criminal possession of a forged instrument in the second degree based upon his possession of a temporary motor vehicle operator's permit and an application for a permanent license, which had been obtained through the use of the assumed name Garry Morris. In reversing the convictions the Court of Appeals explained the concept of forgery as follows:

"So narrowed, the question then becomes whether the in-

struments were forgeries. The search for the answer to that query well may start with section 170.00 of the Penal Law, under which the concept of a forged instrument includes one that is 'falsely made', words which the section informs us are intended to cover a paper 'which purports to be an authentic creation of its ostensible maker or drawer, but which is not such either because the ostensible maker or drawer is fictitious or because, if real, he did not authorize the making or drawing thereof' (subds 4, 7). On its face this language appears to fit the garden variety of forgery, as when, for instance, the signature of the drawer of a check or the grantor of a deed has been counterfeited.

"In signing the name Garry Morris, however, the defendant did not simulate, alter, erase or obliterate someone else's signature. Instead, in handwriting that was undisguised, he merely used his adopted name, as a Samuel Clemens may have used the name Mark Twain or a Mary Ann Evans that of George Eliot. Nor did he do anything directly or indirectly to suggest that anyone but he was the 'ostensible' signer and applicant or, for that matter, that the name Garry Morris was other than his own. In short, he did nothing that would cause one who relied on the instruments to believe that Garry Morris was the name of someone else, real or 'fictitious'. Rather, he was unswerving in painting himself as the 'ostensible maker or drawer'. Nevertheless, the People, insisting that the name Garry Morris must be regarded as 'fictitious' within the intendment of the statute, would have us hold that defendant's position is indistinguishable from that of one who has counterfeited a signature. Neither the history of the common law of forgery nor the logic of its present statutory formulation supports this argument.

"The forged character of a document does not depend so much on whether it contains a falsehood, but on whether, on its face, it misrepresents its authenticity. To illustrate, suppose one other than the owner of real property unauthorizedly affixes the latter's signature to a conveyance of title. The false signature then constitutes the deed a forgery since it, at least impliedly, represents that the instrument is genuine. But suppose the deed, though in fact signed by the grantor, materially misdescribes the parcel's metes and bounds or mendaciously denies the existence of encumbrances. Then, whatever support the misrepresentation may give to a claim of fraud, a prosecution for forgery would not lie. (See, generally, Williams, Forgery and Falsity, 1974 Crim L Rev 71;

Perkins, Criminal Law [2d ed, 1969], pp 342-346; cf. *People v Levitan,* 49 NY2d 87.)

"That is not to say that the signing of one's own name to an instrument cannot be a forgery. While generally it is not illegal per se to adopt an alias or a *non de plume,* freedom to do so reaches its limits when the practice is accompanied by a fraudulent design (see Ann., 49 ALR2d 852; 2 Wharton, Criminal Law [Anderson ed, 1957], § 630).

"Let us take the case of a check drawn in the maker's assumed name and indorsed, as payee, in his original name. This item is 'falsely made' because any person to whom it is negotiated would assume that the maker is a party distinct from the payee. The reason it is punished as forgery is that others might expect that this third party existed and that his credit would stand behind the instrument along with that of the payee (see *Hubsch v United States,* 256 F2d 820, 823; Comment, 37 NC L Rev 200, 204). The facts being to the contrary, i.e., the existence of an additional person being a 'fiction', the result is that ' "the instrument * * * must be a false instrument in itself" ' *(Dunn's case,* 1 Leach CC 59, quoted by LEHMAN, J., in *International Union Bank v National Sur. Co.,* 245 NY 368, 374 [forgery committed through fraudulent use of assumed names as drawers of checks and original name as their payee]).

"It is readily apparent that section 170.00, in deeming an instrument not 'an authentic creation of its ostensible maker' when that maker is 'fictitious' (subd 4), continues to reflect the thinking that emanates from these decisions and commentaries. Specifically, as suggested earlier, the manner in which defendant used the appellation Garry Morris falls without the statutory definition. For one thing, when an individual signs a name to an instrument and acknowledges it as his own, that *person* is the 'ostensible maker'. Consequently, Charles Briggins was the ostensible maker of the license application, and he was certainly not fictitious. For another, this distinction is reinforced by the statute's failure to proscribe mere use of a 'fictitious *name'.*

"While the name Garry Morris was fictitious in the sense that it was not the one the defendant received at birth, in none of the dealings described at trial did he ever seek to disassociate himself from it or to deny that he was the person to whom it referred. And, whatever the benefit or convenience he believed its use afforded him, there is no showing that he employed it as an instrument with which to unfairly impose on others. In other words, given the law's general acquies-

cence in the use of an *alter idem,* be it for business, professional, theatrical or personal reasons, we cannot conclude that defendant's consistent representation that the assumed name was his own manifested any 'intent to defraud, deceive or injure another' (Penal Law, § 170.25). From all this we do not imply that a fraudulent use of a fabricated identity—i.e., a misrepresentation that a fictitious name refers to someone other than its creator—could not sustain a conviction for forgery, or, as charged here, possession of a forged instrument. Rather, we simply hold defendant's conduct was devoid of that character.

"This analysis does not depend on a hypertechnical consideration of the statutory language. The distinction between a fictitious name and a fictitious person is one well recognized by legal scholars (see, e.g., Williams, Forgery and Falsity, 1974 Crim L Rev 71, 75-77). Moreover, we have recently reaffirmed the importance of closely scrutinizing the facts of forgery cases to mark whether an 'ostensible maker' and an 'actual maker' are or are not separate entities *(People v Levitan,* 49 NY2d 87, *supra).*

"Finally, far from suggesting radical alterations in the law, the legislative history describes the goal of the most recent reformulation of the forgery sections as no more than 'condensation, clarification, and elimination of repetition and ambiguity' (NY Legis Doc, 1962, No. 41, p 17; see, also, NY Legis Doc, 1964, No. 14, p 24; Proposed NY Penal Law, Commission Staff Notes [Thompson Co., 1964], pp 360-361). In the same vein, it is instructive that a proposed amendment to the definition of 'falsely make' that would have overruled the time-honored treatment of fictitious names was rejected by the Legislature (see NY Legis Doc, 1966, No. 28, p 42)" *(People v Briggins,* 50 NY2d 302, 305-309, *supra).*

In a similar case, *People v Johnson* (96 AD2d 1083), this court reversed a conviction of forgery in the second degree and dismissed that count of an indictment where a search of the apartment of defendant, a parolee, disclosed a driver's license and a car-leasing agreement in the name of Craig Pummill. Defendant was subsequently identified by the car-leasing agent as the man who identified himself as Craig Pummill. Finding this proof legally insufficient to establish a forgery, this court reasoned: "As defendant correctly argues, since there was no evidence that 'Craig Pummill' existed other than as defendant, there could be no showing that defendant's use of the name 'Pummill' was unauthorized. Hence, the People had to prove that the 'ostensible maker or drawer' of

the rental agreement was 'fictitious'. A 'fictitious' maker or drawer under the intendment of the statute and under well-settled law, however, means more than someone who merely uses as an assumed name (see, *People v Briggins,* 50 NY2d 302). 'Fictitious' signifies a maker or drawer of an instrument who represents that the name he uses is that of someone other than its creator, i.e., a person wholly separate and apart from himself, and that the fiction is intended to 'defraud, deceive or injure another' (Penal Law, § 170.10). The People concede that they did not even attempt to prove that 'Craig Pummill' was a fictitious person. The People maintain, however, that the use of the name by defendant was calculated to deceive or to defraud, implying thereby that the crime of forgery was made out. There was, however, no deception of fraud established by the use of the assumed name, and the rental agreement was not, therefore, 'falsely made' (see *People v Briggins, supra;* Williams, Forgery and Falsity, 1974 Crim L Rev 71, 75)" *(People v Johnson, supra,* at pp 1083-1084).

This aspect of the decision was affirmed on appeal for the reasons stated in this court's memorandum *(People v Johnson,* 63 NY2d 888, 890). Accordingly, from an examination of *Briggins (supra)* and *Johnson (supra),* it can readily be seen that in order to establish the false making of an instrument, it must be shown that the ostensible maker of the instrument was some other fictitious or real third person, other than the actual maker of the instrument, and that further, if a real third person, that the actual maker had no authority to act for that person *(see, People v Levitan,* 49 NY2d 87, 91, *supra).*

In the instant case, I submit that upon examination of these essential requirements for establishing a forgery, it must be concluded that defendant neither falsely completed nor falsely made the fingerprint card since she was both the actual and the ostensible maker of the instrument. Moreover, an analysis of the terms falsely make and falsely complete lends further support to the conclusion set forth initially herein that a fingerprint card is a not a "written instrument" within the intendment of the statute (Penal Law § 170.00 [1]). By its very nature, and the circumstances under which it comes into existence, I fail to see how such a fingerprint card could ever be anything other than the creation of an actual maker who is one and the same person as the ostensible maker. The fingerprints and signature will presumably be obtained almost simultaneously in the presence of a police officer. Therefore, the arrestee, while possibly using a fictitious name, would be unable to represent that the fingerprints are those of some

other person wholly separate and apart from himself. Under such circumstances, the ostensible maker can only be one person, the person who actually made the instrument *(People v Briggins, supra; People v Levitan, supra; People v Johnson, supra).*

Therefore, I can only conclude that the acts of the defendant cannot be found to constitute forgery in the second degree.