**Michael THORNTON, Appellant–Defendant,**

v.

**STATE of Indiana, Appellee–Plaintiff.**

No. 49A02–9401–CR–030.[1]

Court of Appeals of Indiana, First District.

May 31, 1994.

Transfer Denied July 19, 1994.

Howard Howe, Indianapolis, for appellant.

Pamela Carter, Atty. Gen., Jodi Kathryn Rowe, Deputy Atty. Gen., Office of Atty. Gen., Indianapolis, for appellee.

ROBERTSON, Judge.

A bench trial resulted in Michael Thornton's conviction of forgery as a class C felony, and Thornton received a sentence of two years. The State had charged that Thornton had made or uttered a written instrument with intent to defraud, that is, had completed a fingerprint card in such a manner that it purported to have been made by another person, namely Jeffrey J. White. On appeal, Thornton claims the evidence is insufficient to support the conviction. We affirm.

The parties entered into the following STIPULATION OF FACT in this case:

That on August 1, 1992, Michael Thornton submitted for fingerprinting while being booked at the Marion County Jail. During that process, Michael Thornton signed the print card that contained his fingerprints

1. This case was transferred to this office on May 5, 1994, by direction of the Chief Judge.

with the name Jeffrey Jerome White, in the presence of booking official Donald Marr.

The evidence most favorable to the conviction reveals that Deputy Sheriff Gorski arrested Thornton on August 1, 1992, and that Thornton carried no identification. Thornton orally identified himself as Jeffrey Jerome White and gave accurate information about White's date of birth and social security number.

Donald L. Marr, the Indianapolis Police Department identification processor, testified about Thornton and the booking process. The arrest slip, which includes a right thumbprint, is used to identify the arrested individual. If the print matches the thumbprint of an individual already in the system, the arrested individual is given that same gallery number so as to maintain the integrity of the criminal history reported on that individual. If the person has never been. arrested before, then a gallery number has never been assigned and that individual is given a new gallery number. At this point, the new individual's fingerprints and palmprints are taken on separate cards. The fingerprint card is then researched against the existing files in an attempt to locate another card with the same fingerprints. On Thornton's arrest slip, the area of the box marked "GALLERY NUMBER" has been changed. According to Marr, this indicates that Thornton was initially assigned a first offender gallery number but that, at some point, Thornton was found to have a prior arrest record and the arrest slip was changed to reflect Thornton's original gallery number.

Detective Kelly was assigned to the case a few days after the arrest. At that time, he learned that the individual who had identified himself as Jeffrey White had been identified through his fingerprints as Michael Thornton.

■ According to Ind.Code 35–43–5–2, forgery is defined as follows:

*A person who, with intent to defraud, makes or utters a written instrument in such a manner that it purports to have been made:*

(1) *By another person;*

(2) At another time;

(3) With different provisions; or

(4) By authority of one who did not give authority;

*commits forgery, a Class C felony.*

(Emphasis added.) Further,

*"Written instrument" means a paper, document or other instrument containing written matter and includes money, coins, tokens, stamps, seals, credit cards, badges, trademarks, medals, or other objects or symbols of value, right, privilege, or identification.*

I.C. 35–43–5–1 (emphasis added).

Thornton claims that his signature on the fingerprint card was a mere formality to the completion of the card, not an integral part of the transaction or a basis for an ability to complete the transaction. He cites testimony which indicates that an accused's identification is based upon the fingerprints on the card, not upon the name supplied. Along similar lines, Thornton claims that the evidence does not sufficiently establish an intent to defraud because there is no resulting injury or potential for injury. *See Eifler v. State* (1991), Ind.App., 570 N.E.2d 70, *trans. denied.* He argues that he could not possibly have caused injury to the State by using a false name because internal police procedures would have discovered, and did discover, his true identity before he was let to bail.

We need not reinvent the wheel here. While Indiana has not yet determined whether a forgery conviction is supported where someone has signed a false name to a police fingerprint card, appellate courts in other states have addressed the issue. These courts have identified what may be considered a potential for injury to the State. For example, one court has stated:

Indeed, contrary to defendant's contentions, a criminal suspect gains a very real advantage when he signs the name of another to such a card, because he is thereby able to at least temporarily hide from the authorities his prior criminal history and his true identity. As other courts have noted, a false signature could reasonably lead the authorities to conclude that a sus-

pect has no past criminal record and, as a consequence he might be released on his own recognizance or upon very low bail ... Moreover, a suspect with no criminal history who falsely signs a fingerprint card might gain the advantage of having his prints recorded in the name of the other person, thus hampering his identification by the police in future investigations based solely upon presence of his fingerprints at the scene of the crime.

*People v. Kirk* (1985), 115 A.D.2d 758, 758–759, 497 N.Y.S.2d 139, 140, *order affirmed by* 68 N.Y.2d 722, 506 N.Y.S.2d 333, 497 N.E.2d 700 (citations omitted). *See State v. Johnson* (1993), Mo.App., 855 S.W.2d 470; *People v. Thomas* (1990), 162 A.D.2d 822, 558 N.Y.S.2d 641; *People v. Hennessy* (1987), 133 A.D.2d 174, 518 N.Y.S.2d 988. *State v. Edwards* (1986), 201 Conn. 125, 513 A.2d 669; *People v. Bigus* (1985), 115 A.D.2d 751, 497 N.Y.S.2d 145, *order affirmed by,* 68 N.Y.2d 723, 506 N.Y.S.2d 333, 497 N.E.2d 700; *People v. Pergolizzi* (1977), 92 Misc.2d 528, 400 N.Y.S.2d 1005 (and cases cited). *See also, People v. Van Schoick* (1993), 198 A.D.2d 907, 604 N.Y.S.2d 455; *People v. Moore* (1991), 171 A.D.2d 1051, 569 N.Y.S.2d 238. *Compare Johnson,* 855 S.W.2d 470, *Reid v. Commonwealth* (1993), 16 Va.App. 468, 431 S.E.2d 63, *and People v. Johnson* (1990), 168 A.D.2d 700, 564 N.Y.S.2d 206, *with* I.C. 5–14–3–2, I.C. 5–2–7–1 through 3, I.C. 36–2–13–5(a)(8) and (b)(2), and I.C. 36–8–10–9(a)(9) and (b)(2) (fingerprint cards as public records and therefore written instruments). Further, concealment of the true identity of the individual also brings concealment of other, aggravating factors which could elevate the crime charged to a more serious offense. *See Pergolizzi,* 92 Misc.2d at 531–32, 400 N.Y.S.2d at 1007 (quoting *People v. St. Pierre* (1977), 91 Misc.2d 783, 784, 398 N.Y.S.2d 622, 623).

The record does not support the notion that an accused's identification is based solely upon fingerprints, apart from the name supplied by the accused. Marr testified that people may get let to bond under aliases if they are not discovered in the search of the fingerprints. Thus, some individuals may have two gallery numbers. The potential for injury here is apparent. An individual let to bond under an alias may deprive the trial court of the ability to take into account all facts relevant to the risk of nonappearance when it sets an amount of bail, specifically the defendant's criminal or juvenile record insofar as it demonstrates instability and disdain for the court's authority to bring him to trial. *See* I.C. 35–33–8–4(b)(5). In such cases, successful identification by means of the search is not guaranteed. There, the accused's true name would supply the theretofore unknown, true identity. The police should be praised, not prejudiced, by the fact that they employ such extensive procedures to determine the accused's true identity. Such procedures probably diminish, but they do not destroy, the potential for injury. For the reasons provided above, the evidence supports an intent to defraud.

■ Thornton also claims that the facts of this case do not fall within the statement, "forgery includes every act which fraudulently makes an instrument appear what it is not." *See Jordan v. State* (1987), Ind., 502 N.E.2d 910, 913 (quoting *Bowman v. State* (1979), Ind.App., 398 N.E.2d 1306, 1309). Thornton argues that the fingerprint card remained a fingerprint card at all times, regardless of whose name was on it. Thornton ignores the reality that the signature makes the fingerprint card appear to be what it is not, a record of the fingerprints of Jeffrey J. White, instead of what it is, a record of the fingerprints of Michael Thornton.

Thornton, acting with the intent to defraud, made a written instrument in such a manner that it was purported to have been made by another person. The evidence most favorable to the judgment, along with the inferences reasonably drawn, is sufficient to support the conviction.

Judgment affirmed.

BAKER and CHEZEM, JJ., concur.