OPINION OF THE COURT
Robert M. Raciti, J.
On February 2, 2003, defendant was charged with a felony, *364 criminal possession of a forged instrument in the second degree (Penal Law § 170.25), based upon his possession of what the People claimed was a forged Department of Motor Vehicles (hereinafter, DMV) nondriver identification card. On March 20, 2003, the charges were reduced to an A misdemeanor, criminal possession of a forged instrument in the third degree (Penal Law § 170.20). On October 29, 2003, the People opted to reduce the charge again, this time to the B misdemeanor of attempted criminal possession of a forged instrument in the third degree, and answered ready for a bench trial, which was commenced before this court.
At trial the People presented two witnesses. The first, Officer David Carman, testified that he was on routine patrol in the vicinity of 188th Street in Queens County when he spotted the defendant urinating in public view on the wall of a building. Officer Carman stopped, got out of his vehicle and approached the defendant for the purpose of issuing him a criminal summons. When Officer Carman asked the defendant for identification, the defendant handed him the identification card at issue. Officer Carman informed the defendant that the identification card was a forgery, to which the defendant replied that he had purchased it in Manhattan and needed it because he was in the United States illegally. The defendant was thereupon arrested.
The People’s second witness, Susan Green, testified that she has been employed by the DMV for approximately 14 years. Green explained that as a state agency, the DMV was uniquely empowered to issue both driver’s licenses and nondriver identification cards. In order to obtain either type of identification, the applicant is required to submit several forms of supporting identification, which have been ranked using a point value system, to satisfy the DMV of the applicant’s true identity. Point values are assigned various forms of accepted identification, including birth certificates, passports, international visas and documents issued for the Immigration and Naturalization Service.
Green examined the identification card that defendant handed to Officer Carman. She testified that it was not a DMV instrument because, among other things: it contained a faded and bogus New York State seal in its background; it did not bear the signature of the DMV Commissioner; and it contained small print language at the top of the card that indicated that it was a “non-government Photo ID card.”
At the close of the People’s case, defense counsel moved for a trial order of dismissal, which was denied. Defendant then testi *365 fied in his own behalf, and admitted that he handed the identification card at issue to the police officer who was about to issue him a summons for public urination. Defendant explained that he procured the identification from a Manhattan shop after receiving a flyer advertising that service. Defendant also admitted that he was an illegal resident of the United States, and that he bought the identification because he could not get a legitimate identification card from the DMV Defendant testified that the card at issue bears his true name, address, date of birth, photograph and signature. Defendant’s birth certificate from the Republic of Guyana was introduced into evidence to support his testimony. According to defendant, he offered the card to Officer Carman not to deceive the officer, but because it was the only identification he possessed. •
At the close of all the evidence, defense counsel moved for a trial order of dismissal (CPL 290.10), arguing that even if the People had established that the identification card at issue was a falsely made document, as defined by Penal Law § 170.00 (4), and even if they had proved that defendant was aware of that fact, the People did not prove that defendant had any intent to “defraud, deceive or injure” another person by handing the card to Officer Carman. Defense counsel contended that it was never proved at trial that the card contained anything other than defendant’s true pedigree information. Consequently, counsel urged, that when he gave the card to the officer, defendant imparted no false information and evinced no intent to deceive or defraud anyone.
The People opposed defendant’s motion and argued that by merely presenting the fake DMV identification card to a police officer, defendant’s intent was to deceive the officer into thinking that defendant had applied for and had been granted a non-driver identification card by the DMV That, according to the People, was legally sufficient evidence of an intent to deceive, regardless of whether any of defendant’s pedigree information contained on the card was actually false.
Penal Law § 170.20 provides: “A person is guilty of criminal possession of a forged instrument in the third degree when, with knowledge that it is forged and with intent to deceive, defraud or injure another, he utters or possesses a forged instrument.” Examination of the definitional components of Penal Law § 170.00 is essential to the analysis of the legal issue before this court. Section 170.00 (1) defines a written instrument as “any instrument . . . containing written or printed matter . . . *366 used for the purpose of reciting, embodying, conveying or recording information, or constituting a symbol or evidence of value, right, privilege or identification, which is capable of being used to the advantage or disadvantage of some person.” Section 170.00 (7) defines a forged instrument as one that, inter alia, is “falsely made,” which in turn is defined in section 170.00 (4) as a written instrument “which purports to be an authentic creation of its ostensible maker or drawer, but which is not such either because the ostensible maker or drawer is fictitious or because, if real, he did not authorize the making or drawing thereof.” Finally, section 170.10 (3), which defines forged written instruments for the felony version of the crime (Penal Law § 170.25), specifically includes “[a] written instrument officially issued or created by a . . . governmental instrumentality.”
First, the court is satisfied that the People presented legally sufficient evidence that the instrument presented to Officer Carman was a forged instrument as defined by the statute. Notably, while the People did not introduce into evidence an official DMV nondriver identification card as an exemplar, the court will take judicial notice, sua sponte, of the usual appearance of this common official document, which is even displayed on the DMV’s Web site, <http://www.nydmv.state.ny.us/broch/c33.htm>, and which is very similar to an official New York State driver’s license. (See Prince, Richardson on Evidence § 2-204 [Farrell 11th ed].) The plastic identification card in evidence is the identical shape and size and contains the same layout as the DMV official issue. While the conclusion of sameness necessitates viewing the card in hand, a few individual similarities can be verbally described, including that both cards have the words “New York State” in the same font, position and prominent size across the top. Likewise, the card in evidence features what purports to be a New York identification number above the photograph in a layout and color scheme very similar to that of the official DMV card. The card in evidence also contains a supposed issuance and expiration date, modeled after the official card, as well as a background watermark that resembles the official seal of the State of New York, of which the court also takes judicial notice. (People v Reese, 258 NY 89 [1932].)
Defense counsel correctly points out that the card in issue is dissimilar in several respects to an official nondriver identification card. These would appear to be carefully incorporated differences. Most significant, in extremely small print at the very *367 top of the card, just above the prominent New York State banner, are the words, “Legal 1st Amendment, Non-government, Photo ID card for residents of.” In addition, rather than bearing the official title of “Identification Card” below the New York State banner, the card in issue instead uses the words “Resident Identification.” And, the official looking New York State watermark seal is, upon very close inspection, a mimicry of the official seal. It contains two figures standing aside a somewhat different emblem with a slightly different eagle on top. Also, while the word “Excelsior” appears on the official state emblem, the card in issue uses the word “Excellence.”
Putting aside the magnifying glass and considering the appearance and style of the card at issue as a whole, the court is satisfied that it is so similar to an official DMV nondriver identification card that it qualifies as a “falsely made” instrument. There can be no question that the card has been crafted so as to pass as an officially issued DMV card; ostensibly it appears to be one and, borrowing from the definition in Penal Law § 170.10, it is plainly “calculated” to represent one. Likewise, the card at issue purports to constitute “a symbol or evidence of value, right, privilege or identification, which is capable of being used to the advantage or disadvantage of some person.” (Penal Law § 170.00 [1]; People v Prata, 47 Misc 2d 55 [1965] [fake driver’s license].) Indeed, an official DMV nondriver identification card can only be obtained by providing particular identification proof to the Department of Motor Vehicles, and when officially issued its very purpose is to endow the holder the benefit of having passed that close scrutiny. Particularly, the legislative purpose underlying the nondriver identification card system informs the court that the instrument was intended to constitute a “symbol” or “evidence” of “identification,” which has taken on enhanced significance in the post-September 11 era. The Governor’s Memorandum accompanying the 1983 legislation authorizing the DMV to issue nondriver identification cards specifically states that the bill would “[E]nable persons who do not drive to obtain a means of identification similar to a driver’s license. The use of these identification cards will permit many disabled and elderly people to participate more fully in the activities of daily life.” (Governor’s Mem approving L 1983, ch 295, 1983 McKinney’s Session Laws of NY, at 2759.)
Examining the card at issue, this court concludes that it is a falsely made one clearly capable of being used — and in fact plainly designed to be used — to imitate its official DMV counter *368 part in order to gain for its bearer the valuable benefit of an official DMV identification. (People v Prata, 47 Misc 2d 55 [1965].) Notably, defendant originally was charged with felony possession of a forged instrument under Penal Law § 170.25, based upon the very fact that he possessed or uttered a “written instrument,” which is “calculated to . . . represent ... [a] written instrument officially issued or created by a . . . government instrumentality.” (Penal Law § 170.10 [3].)
Nor is the court persuaded that People v Briggins (50 NY2d 302 [1980]), cited by defendant, is to the contrary. In Briggins, the Court of Appeals held that an officially issued DMV license was not “falsely made” where its holder, the defendant, had signed the license with a pseudonym. The narrow holding of that case was based upon the fact that the defendant’s use of a nom de plume did not obviate the fact that he nevertheless was the true maker of an otherwise officially issued DMV license. (See also People v Asaro, 94 NY2d 792 [1999] [the defendant’s misrepresentations to DMV did not affect genuineness of DMV-issued license]; People v Cannarozzo, 62 AD2d 503, 504 [1978] [where DMV agent falsely issues a DMV license, the license is nevertheless a creation of the DMV].) Here, by contrast, defendant possessed not an official DMV card, but rather a craftily-fashioned off-the-street imitation of one, which defendant then signed. Of course, Briggins does not stand for the proposition that by signing one’s real name a person is immunized from possessing a forged written instrument.
Finally, the court is convinced that the evidence presented by the People at trial comprised facially sufficient evidence of defendant’s “intent to deceive” Officer Carman. There is superficial appeal to defendant’s contention that he could not have intended to deceive Officer Carman if none of the information on the card was proved false at trial. However, the meaning of “intent to deceive” as set forth in Penal Law § 170.20 must be considered both in the context of the statutory scheme, and in light of the evidence presented at trial as to defendant’s intent. Clearly, it is the purpose of the statute to criminalize possession with intent to deceive of falsely made written documents, and the knowing possession of a counterfeit DMV identification card seems to fall squarely within the ambit of that proscription. True, the People presented no evidence that the pedigree data on the card were actually false. However, defendant’s own conduct as supported by the People’s evidence was legally sufficient to prove that his purpose in giving Officer *369 Carman the card was to deceive the officer into thinking that he was a legal resident who had shown the requisite identification proof at the DMV and who had been issued an official DMV identification card based upon that proof. The intent to deceive the officer is therefore found in defendant’s intent to induce the officer to accept the validity of the card itself. The court rejects defendant’s position that the statutory intent element includes as an additional layer a requirement that false information is actually contained within the falsely made document. Such a reading is inconsistent with the statute’s actual language and would effectively frustrate its stated purpose. To hold otherwise would wrench from the statute’s proscriptions falsely made simulations of official documents on a mere showing that the information therein contained was not actually false. This court will not read into the statute such an additional intent element.
Accordingly, for all of the foregoing reasons, defendant’s motion for a trial order of dismissal is denied.