781 P.2d 783

**STATE of New Mexico,
Plaintiff–Appellee,**

v.

**Ernest Jose GALLEGOS,
Defendant–Appellant.**

No. 10702.

Court of Appeals of New Mexico.

Aug. 3, 1989.

Certiorari Denied Sept. 6, 1989.

Hal Stratton, Atty. Gen., Margaret B. Alcock, Asst. Atty. Gen., Santa Fe, for plaintiff-appellee.

Jacquelyn Robins, Chief Public Defender, Linda Yen, Asst. Appellate Defender, Santa Fe, for defendant-appellant.

## OPINION

BIVINS, Chief Judge.

The court's opinion filed July 20, 1989 is withdrawn and the following substituted therefor.

Defendant appeals his convictions on three counts involving larceny, aggravated assault with intent to commit larceny, and conspiracy to commit larceny; one count of fraudulent use of a credit card; and one count of larceny over $100. We reverse and remand in part and affirm in part.

■ Defendant moved to amend his docketing statement to clarify certain issues, and to add an additional issue. We grant the motion, except as to the new issue. *See State v. Rael*, 100 N.M. 193, 668 P.2d 309 (Ct.App.1983). However, because we reverse and remand this case in part, and this issue may arise on retrial, we briefly discuss it. We disagree with the state that the motion to amend was untimely, since we granted defendant an extension of time in which to file his brief-in-chief and motion to amend. *But cf. State v. Jacobs*, 91 N.M. 445, 575 P.2d 954 (Ct. App.1978) (motion to amend made during extension of time to file brief-in-chief not timely where original briefing time had expired and where defendant did not also receive extension of time to file motion to amend).

Defendant was indicted March 30, 1987, on eight counts involving three separate alleged crimes. The state subsequently dropped one of these counts. Defendant was convicted of five of the remaining seven counts March 3, 1988. He appeals his convictions, claiming (1) his sixth amendment speedy trial rights on two of the counts were violated by both pre-indictment and post-indictment delay; (2) the trial court improperly denied a motion to sever; (3) admission of a co-defendant's confession violated his sixth amendment rights to confrontation and cross-examination; (4) the trial court erred in granting an amend-ment to the indictment; and (5) the evidence on all counts was insufficient to convict. He also raises a sixth point, that the trial court erred in allowing certain evidence to be admitted. We do not reach the merits of this issue because defendant raised it improperly; however, we hold that on retrial, this evidence should not go to the jury.

We resolve these issues as follows: (1) Finding no speedy trial violations, we affirm the trial court's denial of defendant's motion to dismiss two of the counts for speedy trial violations. (2) We agree with defendant that the trial court erred in refusing to grant his motion for severance. Therefore, we reverse and remand for separate trials on the three charges. (3) We affirm the trial court's admission of co-defendant Goode's statement because the statement fulfills the "indicia of reliability" test laid out in *State v. Earnest*, 106 N.M. 411, 744 P.2d 539, *cert. denied*, 484 U.S. 924, 108 S.Ct. 284, 98 L.Ed.2d 245 (1987). (4) The trial court properly granted the amendment to the indictment. (5) Finally, we hold that the evidence was sufficient to support the convictions.

## FACTS

The charges in this case stem from three separate incidents. Counts II through VI involved a larceny that occurred at Sundance Automotive in Albuquerque on October 24, 1986 ("Sundance case"). Count VII involved fraudulent signing of a credit card at Sears in Albuquerque on August 2, 1986 ("Sears case"). Count VIII involved larceny over $100 for the theft of automobile tires and rims from a car on February 23, 1986 ("Tires case").

### A. SUNDANCE CASE

Donald Goode entered Sundance Automotive around 4:30 p.m. on October 24, 1986, to ask about possible employment. While he was filling out an application, the Sundance employee left the room. Goode then snatched up a cash box that was behind and underneath the counter, out of public view, and began to run toward Best Discount Store. Two Sundance employees heard the change rattling and pursued

Goode. Paul Andrews, a United Parcel Service (UPS) employee who was making a delivery in the area at the time, joined in the chase. Goode fired a gun in Andrews' direction before jumping into a blue Pontiac that was waiting in the Best parking lot. The license plate was covered by a piece of paper, which Andrews was able to grab as the Pontiac drove off, allowing him to observe the license plate number. Neither Andrews nor the two Sundance employees saw the driver of the car.

A fourth witness, Lennie Garcia, an employee of a nearby office supply store, saw two men run by. The first looked at him and grinned; the second carried a small gun and a cash box. He saw this second man fire the gun. Andrews shouted at Garcia to stop the second man, but Garcia did not join in the chase. At trial, Garcia testified that neither of the two men he had seen was in the courtroom.

The Pontiac was ultimately traced to defendant's mother through the license plate number. Marcia Sinclair, defendant's ex-girlfriend, testified that defendant told her he was driving his mother's car the day of the larceny because his was in the shop; that he had gone to pick up a friend at work; and, fearing that "something like this was going to happen," he had covered the license plate. He denied any involvement with the larceny, however. Upon cross-examination, defense counsel elicited from Sinclair that defendant had an outstanding judgment against her for taking his television set, and that, although she had been charged with harboring a felon (defendant), she had been allowed to leave the state after giving police her statement.

The state introduced into evidence a confession by Goode to Detective Cantwell. Cantwell obtained the confession while she was interrogating Goode on other charges involving the murder of Guy Funkhouser. Goode, knowing that the police had his fingerprints from the employment application, voluntarily stated that he had committed the larceny; that defendant had given him the gun; that defendant, who had previously worked at Sundance Automotive, told him where the cash box was located;

that he (Goode) had shot at the UPS driver, but did not aim at or intend to shoot him; and that defendant drove the car. Goode refused to testify at trial. The state therefore presented Goode's confession as testimony of an unavailable witness under SCRA 1986, 11–804(A)(2). The court admitted it over defendant's objection.

Defendant did not testify; however, he presented the testimony of Toby Zamora as an alibi. Zamora, an auto body repairman at the time of the crime, testified that he was working on defendant's car the day of the larceny, and that defendant was at the shop at which Zamora worked from around 4:30 p.m. to 5:30 or 6:00 p.m., waiting for the work to be finished. On cross-examination, the prosecutor impeached Zamora with three prior convictions involving various types of theft.

The jury convicted defendant of larceny over $2500, conspiracy to commit larceny over $2500, and aggravated assault with intent to commit a larceny, with firearm enhancement. Defendant was acquitted of two other counts of aggravated assault with intent to commit larceny.

## B. TIRES CASE

On February 23, 1986, at approximately 9:30 p.m., Art Vermillion noticed a figure crouched near the front of his neighbor Miles Zintz's car. The car was propped up on bricks and some tires were missing. Vermillion asked "Miles, are you having a problem?" A man responded he was fixing a flat. The voice was not Miles' voice. Vermillion went home, called Zintz, found that he was at home, and found that nothing was wrong with his car. He got a light and began to go out the door to find out what was happening. He saw a figure running toward him. He stepped out and asked for identification. The person responded, "I am Miles." Again, the voice was not that of Miles Zintz. Vermillion did not pursue the man, but went instead to Zintz's house. He saw three wheels stacked up in the bushes near Zintz's car, and also saw the lug nuts lying around.

Zintz's wife called the police. While they waited for the police, Vermillion and anoth-

er neighbor began looking around the neighborhood. They saw a strange car down the street parked in a place visible from the Zintz residence. It was unoccupied; Vermillion copied down the license number, which was later found to match one of two license plates defendant apparently used for his car, a late model Cadillac. Vermillion believed the person he saw running toward him was the same as the first person he saw. He identified defendant as that person both during a photo array the police presented to him, and at trial.

When the police came to investigate, they found defendant sitting in the Cadillac. Upon searching the car, they found a screwdriver wrapped in a jacket inside the car. They also found a tire iron in the trunk.

Zintz testified that he had not given anyone permission to remove the tires and rims, and that they were valued between $520 and $550. Defendant was convicted of larceny over $100.

## C. SEARS CASE

On August 2, 1986, defendant approached a sales clerk at Sears. He handed her a gold chain and a Sears credit card. The clerk received an indication that something was wrong with the card; she called for and obtained approval. However, she noted that the signature on the sales slip did not match the one on the card. She asked for identification; defendant told her he left his wallet in the car. The clerk called a security guard and began arguing with defendant about where he obtained the card. Finally, defendant left the store, leaving the merchandise and card behind. A security assistant followed defendant from the store and saw him enter a 1970 Cadillac. All three identified defendant as the person attempting to use the credit card. The arresting officer also testified that, while she viewed a videotape of the transaction at the police station, another officer saw it and identified the customer as defendant.

Defendant was arrested the same day. Upon arrest, he admitted that he had found the card in a trash can while walking through the mall with his brother, that he decided to "go see if we can get anything with this," and that he had tried to purchase the gold chain with the card.

Defendant was convicted of fraudulent signing of a credit card.

## DISCUSSION

### A. ISSUE ONE—SPEEDY TRIAL

At the outset, we note that, although defendant moved in the district court to dismiss all the counts for speedy trial violations, he does not appeal the denial of his motion on the counts involving the Sundance case.

#### 1. TIRES CASE

Defendant was arrested for this crime on February 23, 1986. He was released pending investigation, without having to post bond. Although defendant believed he was subject to a restriction not to leave Bernalillo County, the record does not reflect that such a condition was imposed. Defendant claims that the arrest alone was sufficient to trigger his speedy trial rights. He argues that his speedy trial rights attached on the day of his arrest because the state had completed its investigation of the case, essentially making him an "accused" protected by the sixth amendment.

Our recent case of *State v. Sanchez*, 108 N.M. 206, 769 P.2d 1297 (Ct.App.1989), answers this issue adversely to defendant. "[A]rrest alone, without posting bond, imposition of restrictive conditions of release, or being held to answer for unresolved criminal charges does not trigger a defendant's speedy trial rights under the sixth amendment." *Id.* at 207, 769 P.2d at 1298. Because defendant's sixth amendment speedy trial right was not triggered in this case by the arrest alone, we affirm the trial court's denial of his motion to dismiss the charge for a pre-indictment violation of his speedy trial rights.

Defendant's speedy trial rights did not attach until his indictment on March 30, 1987. Thus, the only period of delay we review for purposes of defendant's speedy

trial issue in this case is the time after indictment. After the state received two six-month rule extensions under SCRA 1986, 5–604(C) from the supreme court, trial commenced on February 29, 1989, an eleven-month delay. Whether there was sufficient delay to trigger defendant's speedy trial rights depends on the effect of supreme court extensions of time under Rule 5–604(C). We have held that, where trial is commenced within the time limits of the six-month rule, there is no presumptively prejudicial delay. *State v. Santillanes*, 98 N.M. 448, 649 P.2d 516 (Ct.App.1982). *See State v. Mascarenas*, 84 N.M. 153, 500 P.2d 438 (Ct.App.1972) (six-month rule expresses policy of our state as to acceptable length of delay). Because the time about which this defendant may complain under the *Sanchez* holding is limited to the same amount of time the supreme court dealt with in granting extensions, defendant is essentially asking us to review the propriety of the supreme court's grant of extensions of time. This we cannot do. *State v. Mazurek*, 88 N.M. 56, 537 P.2d 51 (Ct.App. 1975). *See also State v. Apodaca*, 105 N.M. 650, 735 P.2d 1156 (Ct.App.1987) (time period about which complaint was made was largely the same time period as covered by the six-month rule and extensions thereof). We therefore affirm the trial court's denial of defendant's motion as regards the post-indictment period.

## 2. SEARS CASE

■ Defendant was arrested for this crime on August 2, 1986; he posted a $2500 bond the same day. He was indicted on March 30, 1987, and tried on February 29, 1988. Because he posted bond, his speedy trial rights were triggered on August 2, 1986. *See Kilpatrick v. State*, 103 N.M. 52, 702 P.2d 997 (1985).

We analyze speedy trial claims under the four-factor test set forth in *Barker v. Wingo*, 407 U.S. 514, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972). In this case, there was nearly a nine-month pre-indictment delay between the August 1986 arrest and the March 1987 indictment and an eleven-month delay between the indictment and trial in February 1988. We recognize we held above that,

where pre-indictment delay is not factored and post-indictment delay is approved by supreme court extensions, we will not review defendant's issue. As to the Sears case, we will not separate the two periods of delay for purposes of analysis because we wish to reserve the issue of whether a supreme court extension affects our review of a case involving both pre-indictment and post-indictment speedy trial issues. Moreover, deciding the reserved issue is not necessary to a disposition of this case.

■ Before we engage in a *Barker* analysis of the period of delay, we must find this time period is presumptively prejudicial. In this relatively simple case, we assume a twenty-month delay is presumptively prejudicial, *see State v. Kilpatrick*, 104 N.M. 441, 722 P.2d 692 (Ct.App.1986), thus triggering the *Barker* analysis.

■ Once defendant presents evidence of the length of the delay, the state may rebut this by showing that a portion of the time period is attributable to defendant, and that the "time involved is not impermissibly long." *State v. Tartaglia*, 108 N.M. 411, 414, 773 P.2d 356, 359 (Ct.App. 1989). The state here asserts that defendant fled the jurisdiction for almost four months of the nine-month pre-indictment delay, thus contributing to the delay. Ordinarily, we would agree with the state that a defendant who flees the jurisdiction while under bond restrictions should not be able to use this time period to create presumptively prejudicial delay. The trial court in this case made no findings on this, however, and we cannot make these findings on appeal. Therefore, we must hold the nine-month delay was presumptively prejudicial, requiring an analysis of the other *Barker* factors.

■ A factual finding on this issue could have disposed of defendant's speedy trial claim without the necessity of engaging in a *Barker* analysis. Because speedy trial claims are so fact-sensitive, we urge the trial courts to make findings of fact, particularly where, as here, the evidence concerning defendant's flight and date of arrest conflicted. *See State v. Boseck*, 45

Wash.App. 62, 723 P.2d 1182 (1986) (trial court's findings are of great significance to reviewing court, especially where those findings are based on conflicting evidence). Nevertheless, the appellate court must independently examine the record to determine whether there has been a violation of the constitutional right. *See id.*

■ The state must present evidence of the reason for the delay. *State v. Tartaglia.* The state asserts that the reason for the pre-indictment delay was administrative backlog, a neutral reason which we weigh against the state, but not heavily. *State v. Kilpatrick.* The state asserts that most of the reason for the post-indictment delay was complications arising from the fact that the Sears case was joined with the Sundance case and the state had problems obtaining the testimony of a co-defendant in the latter case. Such complications should also not be weighed heavily against the state. *See State v. Grissom,* 106 N.M. 555, 746 P.2d 661 (Ct. App.1987).

■ In this case, defendant first asserted his right six months after indictment. While defendant does not have to assert his right before indictment, *State v. Kilpatrick,* we believe it is inconsistent to complain about a lengthy pre-indictment delay and then wait six months after indictment before bringing it to the court's attention. Thus, we will weigh this factor in neither party's favor.

■ As to the final *Barker* factor—prejudice—defendant asserts that he was subject to oppressive pretrial incarceration and anxiety. He claims oppressive pretrial incarceration while he was released on bond because he suffered economic loss from losing his job. However, the facts show he lost his job after his arrest on the Tires case, not after his arrest on the Sears case. We do not believe this constitutes oppressive pretrial incarceration. He does not assert any anxiety different from that attendant to most criminal prosecution, *see State v. Grissom;* therefore, we weigh this factor against him. Defendant did not assert that his defense was impaired by the pre-indictment delay, asserting that under

*Moore v. Arizona,* 414 U.S. 25, 94 S.Ct. 188, 38 L.Ed.2d 183 (1973), he does not have to show actual prejudice. Defendant misreads *Moore;* that case held that a showing of actual prejudice is not a prerequisite to prevail on a speedy trial claim. It does not mean that a defendant who claims impairment to his defense need not present affirmative evidence of impairment. *See State v. Tartaglia.* Since defendant made no assertion of impairment, however, we do not weigh his failure to present evidence against him. However, we weigh the prejudice factor in general against defendant, since he failed to show oppressive pretrial incarceration or anxiety.

■ Balancing these factors, we find a presumptively prejudicial delay attributable to neutral reasons. The assertion of the right factor is weighed in neither party's favor. The defendant showed no prejudice. Therefore, we affirm the trial court's denial of defendant's motion to dismiss the Sears case on speedy trial grounds.

## B. ISSUE TWO—SEVERANCE

Defendant argues that the three crimes charged in the indictment should have been tried separately under SCRA 1986, 5–203. We agree.

■ Defendant argues both that the offenses were improperly joined under Rule 5–203(A) and that the court abused its discretion in failing to sever under Rule 5–203(C). In *State v. Paschall,* 74 N.M. 750, 398 P.2d 439 (1965), a pre-rules of criminal procedure case, our supreme court noted that the question of whether charges are properly joined is largely governed by the same considerations as are applied to an application for severance. Similarly, commentators on the federal rules of criminal procedure note that an important consideration in determining the propriety of joinder of offenses of the "same or similar character" is whether evidence of one offense would be admissible in the trial of another. 1 C. Wright, *Federal Practice and Procedure: Criminal* § 143 (2d ed. 1982). This is the same standard we use in determining whether defendant has shown

the requisite prejudice for us to be able to say that the district court abused its discretion in denying a severance. *State v. Burdex*, 100 N.M. 197, 668 P.2d 313 (Ct.App. 1983). Nonetheless, we need not decide in this case whether different considerations or a different standard should apply to cases alleging improper joinder as compared to cases alleging error in the failure to sever. *See State v. Gammill*, 102 N.M. 652, 699 P.2d 125 (Ct.App.1985). This is because it is clear that the district court abused its discretion in refusing to sever.

In *Paschall*, the supreme court held the trial court abused its discretion in refusing to sever four different indictments for trial. The indictments charged Paschall with concealing property belonging to another, larceny of pipe, two charges of receiving stolen property, selling stolen property, and larceny. The six crimes occurred at different times over a two-year period and involved five different victims. The court noted that, although a trial court has broad discretion in deciding motions to sever, it is "fundamental, however, that courts must not permit a defendant to be embarrassed in his defense by a multiplicity of charges to be tried before one jury." *Id.* at 752–53, 398 P.2d at 440. The court held that "in the very nature of things it cannot be said that the defendant ... was not prejudiced in his defense by consolidation for trial of these separate charges." *Id.* at 754, 398 P.2d at 441.

We believe defendant in this case was embarrassed in his defense by the multiplicity of charges before one jury. *See id.* The crimes charged in this indictment were remote in both time and place of occurrence. Moreover, although all three involved some form of theft, defendant's modi operandi were not similar in each crime. The victims of the crimes were all different, as were the articles stolen or attempted to be stolen. None of the witnesses of the crimes were the same. The crimes were not provable by the same evidence.

▆▆▆▆▆ To obtain a severance, defendant must prove he was prejudiced. *See State v. Gammill.* He argues that he was

prejudiced because the joint trial allowed the state to get before the jury evidence of "other crimes" under SCRA 1986, 11–404(B), which would not have been admissible in separate trials. He asserts that this allowed the jury to use evidence of one crime to infer defendant's criminal disposition on the others. Rule 11–404(B) allows evidence of other crimes, wrongs, or acts to prove "motive, opportunity, intent, preparation, plan, knowledge, identity or absence of mistake or accident." We do not believe evidence of one of these crimes would have been admissible in trials on the others, since there is no common thread linking these crimes that would have fallen within Rule 11–404(B). *See State v. Burdex* (no prejudice where evidence showed common modus operandi).

We deem it noteworthy that the state does not advance any arguments to support the admissibility of evidence of entirely distinct crimes in separate trials of the charges against this defendant. The state, citing *State v. Johnson*, 84 N.M. 29, 498 P.2d 1372 (Ct.App.1972), and other similar cases, argues that the denial of the severance motion was not prejudicial because the jury acquitted defendant of two of the seven counts, thus showing it was able to follow the evidence and was not swayed by the fact that defendant was charged with three separate crimes. We agree that this may often provide a strong indication of lack of prejudice. It does not, however, overcome the prejudice resulting from having evidence of other crimes before the jury, at least under the circumstances of this case, where they were different, totally unrelated, and remote in time.

We follow the rationale of *Paschall*, and reverse and remand for separate trial on each of the three crimes.

### C. ISSUE THREE—ADMISSION OF CO-DEFENDANT GOODE'S CONFESSION AND WAIVER OF RIGHTS

### 1. ADMISSION OF THE STATEMENT TO DETECTIVE CANTWELL

Although we have reversed defendant's convictions because of the improper join-

der, we address this issue because it will likely arise on retrial.

Defendant claims he was denied his right to confrontation because the state introduced co-defendant Goode's statement implicating defendant in the Sundance larceny. Because Goode refused to testify, defendant was unable to cross-examine him. Such statements are presumptively unreliable. *Lee v. Illinois*, 476 U.S. 530, 106 S.Ct. 2056, 90 L.Ed.2d 514 (1986); *State v. Earnest.* The state must rebut this presumption by demonstrating sufficient "indicia of reliability." *State v. Earnest.* It must show (1) Goode was not offered leniency in exchange for the incriminatory statement; (2) the statement was against Goode's penal interest; (3) Goode did not attempt to shift responsibility from himself to defendant; and (4) independent evidence was presented at trial which substantially corroborated Goode's statement. *See id.*

The first three indicia of reliability are clearly met here. There is no evidence that Goode was offered leniency in exchange for the statement. In fact, he voluntarily gave the statement while being questioned on other charges. The statement was clearly against his penal interest because he admitted that he and defendant carried out the crime, and that he shot at Andrews. Nor did he attempt to shift liability to defendant, because he implicated himself in the crime also. The question arises of whether there was other evidence substantially corroborating Goode's statement.

The corroboratory evidence here was that (1) defendant's mother's car was used in the larceny; (2) Marcia Sinclair testified that defendant told her he was using his mother's car that day, that he had gone to pick up a friend, and, fearing that "something like this was going to happen," he covered the license plate; (3) a witness removed a piece of paper covering the license plate; and (4) Goode was able to quickly locate the money box, which was not visible from the front of the counter. Although defendant presented some alibi testimony, the jury obviously did not believe it. The jury determines the credibility of the witnesses and resolves conflicts in the evidence. *State v. Lankford,* 92 N.M. 1, 582 P.2d 378 (1978); *State v. Hudson,* 78 N.M. 228, 430 P.2d 386 (1967).

This evidence is sufficiently corroborative of Goode's statement to satisfy *Earnest*'s indicia of reliability requirement. Therefore, we decline to hold that defendant's confrontation rights were violated by the admission of Goode's statement.

## 2. ADMISSION OF THE WAIVER OF RIGHTS FORM

Defendant also claims that the Waiver of Rights which Goode signed prior to questioning on the Funkhouser murder either should not have been admitted at all, or should have been admitted without deletion of the reference to the Funkhouser case. Defendant made these objections below. He did not, however, raise them in his original docketing statement, but raised them in a motion to amend his docketing statement.

Defendant cites no authority that this is a jurisdictional issue or involves fundamental error, *see In re Adoption of Doe*, 100 N.M. 764, 676 P.2d 1329 (1984), nor have we found any such authority. Accordingly, we will only grant a motion to amend his docketing statement "upon good cause shown." SCRA 1986, 12–208(C). Defendant asserts this issue was omitted from the original docketing statement "due to inadvertence." We do not deem this reason "good cause shown," and accordingly deny the motion to amend the docketing statement to raise this issue. *See State v. Rael.*

However, this issue will likely arise on retrial, and we should therefore instruct the trial court. We believe that the Waiver of Rights form should not go to the jury. It is irrelevant to anything it must decide. The state argues the Waiver goes to the issue of the voluntariness of Goode's statement, and hence, its reliability under *Earnest*. However, whether a statement bears the indicia of reliability required by *Earnest* is a question of law for

the court to decide, not a question of fact. The Waiver should not, therefore, go before the jury on retrial.

### D. ISSUE FOUR—AMENDMENT OF THE INDICTMENT

The state originally charged defendant in Counts III, IV, and V with assault with intent to commit the violent felony of robbery contrary to NMSA 1978, Section 30-3-3 (Repl.Pamp.1984). Prior to trial, the state amended the indictment to charge assault with intent to commit the felony of larceny. It did not, however, change the statutory reference from Section 30-3-3 to NMSA 1978, Section 30-3-2(C) (Repl.Pamp. 1984), the appropriate section. Defendant objected to the amendment, arguing that larceny is not one of the inherently dangerous felonies the legislature intended to include in Section 30-3-3, and that there was no such crime as assault with intent to commit the violent felony of larceny. He also argued that he did not have notice the state was not proceeding under Section 30-3-3, but under Section 30-3-2(C). The trial judge overruled his objection, noting that larceny was a lesser included offense of robbery, and that he had actually read the charges to the jury as assault with intent to commit larceny, so that defendant was on notice of the charges against him.

Defendant raised this issue with regard to Counts III, IV, and V. We address Count V (assault of Paul Andrews with intent to commit larceny) only, since the jury acquitted defendant on Counts III and IV.

 We uphold the trial court's ruling on this issue. Under SCRA 1986, 5-204(C), an indictment may be amended to conform to the evidence, so long as a variance between the indictment and the evidence offered in support of it does not prejudice substantial rights of the defendant. Defendant has not shown prejudice in this case.

 Larceny is a lesser included offense of robbery. *State v. Wingate*, 87 N.M. 397, 534 P.2d 776 (Ct.App.1975). A defendant is placed on notice of the potential for being charged with lesser included

offenses of an offense charged in the indictment. *See State v. Edwards*, 97 N.M. 141, 637 P.2d 572 (Ct.App.1981). The trial court could have instructed on all lesser included offenses supported by the evidence, even though defendant objected to the instruction. *Id.; Glymph v. United States*, 490 A.2d 1157 (D.C.App.1985). Defendant therefore was not prejudiced by the amendment, especially given the facts that (1) the amended charge was a fourth degree felony, while the original charge was a third degree felony, and (2) defendant heard the trial court charge the jury initially that he was charged with assault with intent to commit larceny. He cannot argue he was without notice that the state was basing its case on the aggravated assault section upon which the jury was ultimately instructed.

 The fact that the amended indictment continued to contain the statutory references to assault with intent to commit a violent felony is not fatal to the indictment. Misreference to statutory sections is not a sufficient reason to dismiss the indictment. *State v. Covens*, 83 N.M. 175, 489 P.2d 888 (Ct.App.1971).

Therefore, the trial court could properly allow the amendment to the indictment.

### E. ISSUE FIVE—SUFFICIENCY OF THE EVIDENCE ON COUNTS II, V, VI, VII, AND VIII

 Defendant argues that the evidence was not sufficient to support his convictions on Count II (larceny over $2500) and Count VI (conspiracy to commit larceny over $2500), because his "mere presence" at the scene of the crime does not show he shared Goode's criminal intent to commit the larceny, and because there was no direct evidence of his intent. Intent is rarely established by direct evidence; rather, it is usually inferred from other facts of the case. *State v. Sparks*, 102 N.M. 317, 694 P.2d 1382 (Ct.App.1985). Moreover, the evidence showed more than defendant's "mere presence" at the scene of the crime. The evidence presented was that defendant gave Goode the gun, that he

told Goode where the cash box was located, that he covered the car's license plate, and that he drove the car. From this evidence, the jury could have reasonably inferred that defendant and Goode planned the larceny, and that defendant took part in carrying it out.

 Defendant argues that he could not have been convicted on Count V (assault with intent to commit larceny), because the larceny was already completed when Goode fired at Paul Andrews. We disagree. Larceny is a continuing offense. *State v. Meeks*, 25 N.M. 231, 180 P. 295 (1919); *State v. Tapia*, 89 N.M. 221, 549 P.2d 636 (Ct.App.1976). It was not complete merely upon Goode's flight with the cash box. The assault here was closely bound up with the larceny itself, and was apparently committed to ensure that the larceny would be successful. On these facts, we cannot say as a matter of law that the assault was not committed in the course of the larceny.

■ As to Count VII (Tires case), defendant argues there is no direct evidence that he was the person who removed the tires. He incorrectly argues that direct evidence is necessary to convict. Our supreme court has clearly held that circumstantial evidence can be sufficient evidence on which to convict. *State v. Brown*, 100 N.M. 726, 676 P.2d 253 (1984). "A verdict in a criminal case will not be set aside if supported by substantial evidence; the fact that the evidence is circumstantial does not alter this approach." *State v. Adams*, 89 N.M. 737, 740, 557 P.2d 586, 589 (Ct.App. 1976). From the evidence presented at trial, we hold the jury could have determined that defendant was present and that he removed the tires.

■ As to Count VIII (Sears case), defendant argues there was no direct evidence that he was not authorized to use the credit card. Fraudulent intent may be proved by reasonable inferences drawn from a defendant's statements and conduct. *State v. Gardner*, 103 N.M. 320, 706 P.2d 862 (Ct.App.1985). Again, circumstantial evidence can be sufficient evidence to convict. *State v. Brown*. From the evidence presented—that defendant found the card in a trash can, and that he left the card and the merchandise he had attempted to purchase after Sears employees questioned his signature—the jury could have logically inferred that he did not have authority to use the card.

CONCLUSION

We reverse and remand for separate new trials on the three crimes because of the improper denial of defendant's motion to sever. We affirm on all other issues.

IT IS SO ORDERED.

MINZNER and CHAVEZ, JJ., concur.