1997-NMCA-037

939 P.2d 1098

**STATE of New Mexico,
Plaintiff–Appellee,**

v.

**Yvonne T. NGUYEN, Defendant–
Appellant.**

**No. 17322.**

Court of Appeals of New Mexico.

April 9, 1997.

Tom Udall, Attorney General, Arthur W. Pepin, Assistant Attorney General, Santa Fe, for Plaintiff-Appellee.

Ronald Higginbotham, Roswell, for Defendant-Appellant.

## OPINION

BOSSON, Judge.

1. Following a jury trial, Defendant Yvonne Nguyen was convicted of two counts of forgery arising from two separate incidents. *See* NMSA 1978, § 30–16–10(B) (Repl.Pamp.1994). Defendant had moved unsuccessfully for separate trials on the two charges. She raises the following issues on appeal: (1) whether the trial court erred in failing to grant her motion to sever the two counts of forgery into two trials, and (2) whether the trial court erred in failing to grant her motion for directed verdict because a bingo card lacks legal efficacy as required by the forgery statute. *See* § 30–16–10(A). We affirm.

## BACKGROUND

2. In February 1994, at the Eagles Club in Roswell, New Mexico, Defendant presented to the game operators what she claimed to be a winning bingo card after a blackout game which offered a $1000 prize. A blackout game is a form of bingo in which every number on the bingo card has to be covered for a player to have a winning card. In the process of verifying Defendant's card, the operators discovered that a numbered square cut from another bingo card had been glued over one of the numbers on Defendant's card. The number that had been glued on was the same as another number that had been called so that the card had two identical numbers. The operators disqualified her card and barred her from playing at the Eagles Club. Approximately one year later, in January 1995, Defendant was playing bingo at the Roswell VFW Lodge and presented a bingo card after a blackout game with a $1000 prize. When the card was checked, the operators discovered that the number 53 had been changed to the number 58 with a black pen. Number 58 had already been called so that the card had two squares with the same number. Defendant's card was disqualified from winning the prize and Defendant was barred from playing bingo at the VFW Lodge.

3. Defendant was subsequently charged with two counts of forgery and the State sought to try both counts together. Defendant objected and moved for separate trials of the two charges; the trial court denied her motion to sever.

## DISCUSSION

### Motion to Sever

4. As a preliminary matter, we note that joinder of the two counts was appropriate because the offenses were of the same or similar character. *See* Rule 5–203(A)(1) NMRA 1997; *State v. Gallegos*, 109 N.M. 55, 63, 781 P.2d 783, 791 (Ct.App.1989). Both occurrences involved Defendant presenting an altered bingo card for payment following a blackout bingo game, and each time the card had been altered to show two identical numbers on the same card.

5. Offenses that have been properly joined may be severed if the defendant or the state is prejudiced by the joinder. Rule 5–203(C). Denial of a motion to sever is within the discretion of the trial court. *State v. Griffin*, 116 N.M. 689, 693, 866 P.2d 1156, 1160 (1993). The trial court's decision will not be disturbed without a showing of an abuse of discretion, which resulted in prejudice to the defendant. *Id.; State v. Jones*, 120 N.M. 185, 186, 899 P.2d 1139, 1140 (Ct. App.1995), *cert. quashed*, 121 N.M. 57, 908

P.2d 750 (1996). One basis for such prejudice would be if a joint trial permitted the state to introduce evidence of other crimes that would not have been admissible in separate trials. Rule 11–404(B) NMRA 1997; *Jones,* 120 N.M. at 186, 899 P.2d at 1140; *Gallegos,* 109 N.M. at 64, 781 P.2d at 792. If, however, evidence of the two incidents would have been independently admissible in separate trials, then it would not be error to try the two charges in a single trial. *Griffin,* 116 N.M. at 693, 866 P.2d at 1160; *Jones,* 120 N.M. at 186, 899 P.2d at 1140; *Gallegos,* 109 N.M. at 63–64, 781 P.2d at 791–92.

6. In this case, Defendant's pretrial motion for severance was denied because the trial court ruled that evidence of the two offenses would be mutually admissible in separate trials, as an exception under Rule 11–404(B), to show intent, absence of mistake, or accident. Defendant renewed her motion to sever the day before trial. She offered to stipulate that she would not claim that the alterations to the bingo card were by mistake or accident; her defense would be only that she denied altering the cards. The trial court again denied the motion to sever.

7. Under Rule 11–404(B), evidence of other crimes, wrongs, or acts may be admissible when relevant to prove, among other matters, "motive, opportunity, intent, preparation, plan, knowledge, identity or absence of mistake or accident." The evidence may not be used to show the bad character of the accused or a propensity to act in accordance with that character. *Jones,* 120 N.M. at 187, 899 P.2d at 1141; *State v. Lucero,* 114 N.M. 489, 492, 840 P.2d 1255, 1258 (Ct.App. 1992). The evidence may be admitted if the trial court determines that it is relevant to a disputed issue. *State v. Hall,* 107 N.M. 17, 25, 751 P.2d 701, 709 (Ct.App.1987). If a sufficient basis for admissibility under Rule 11–404(B) is established, then, under Rule 11–403 NMRA 1997, the court must weigh the probative value of the evidence against its prejudicial consequences before deciding to admit it. *Hall,* 107 N.M. at 25, 751 P.2d at 709.

8. Defendant contends that once she offered not to rely upon mistake or accident as a defense, any legitimate purpose for admitting evidence of other crimes, wrongs, or acts under Rule 11–404 no longer existed. She argues that the evidence was used to show a character flaw or a propensity for cheating, and therefore evidence of the other forgery was inadmissible. She maintains that introduction of the inadmissible evidence was so prejudicial that it was an abuse of discretion for the trial court not to grant the motion to sever.

9. The State responds that the evidence of the other bingo card incident would still be relevant, even with Defendant's stipulation, because the State had to prove that Defendant had "knowingly" issued or transferred a forged writing with "intent to injure or defraud." Under Section 30–16–10(B), forgery is defined as "knowingly issuing or transferring a forged writing with intent to injure or defraud." Additionally, the State argues, Defendant's trial testimony put at issue her alleged lack of intent and lack of knowledge. Defendant testified that she had never seen two identical numbers on a bingo card and had no idea how her card had been altered in that manner. She also denied knowing that the card was altered when she presented it for payment. The State maintains that evidence of the two incidents would have been independently admissible in separate trials to prove the essential elements of intent and knowledge. The State argues that evidence of the presentation of another bingo card, altered in a similar manner, in another blackout bingo game was relevant to negate Defendant's claim that she had presented the cards without knowledge of their falsity or intent to defraud. We agree with the State's position.

10. This Court determined in *State v. McCallum,* 87 N.M. 459, 461, 535 P.2d 1085, 1087 (Ct.App.1975), a case involving several counts of fraud based on unfinished construction contracts, that evidence of other acts was admissible to show motive or intent. The court reasoned that evidence of several contracts left uncompleted was relevant to show fraudulent intent. *Id.* If evidence had been permitted for only one count, "it would be possible for the jury to conclude that either the business of home construction is

risky, that defendant is simply a poor businessman, or that defendant mistakenly believed that he could complete the contract." *Id.* Similarly, in this case, a single altered bingo card might be explained as an unusual accident not due to any wrongful act on the part of Defendant. When the defendant admits the act which constitutes the crime, but denies having the required mental state, then evidence of another, nearly identical, act is admissible to show intent and knowledge. *See United States v. Johnson,* 934 F.2d 936, 940 (8th Cir.1991) (evidence of subsequent drug transaction was relevant to counter defendant's claim that he was merely present at a drug transaction and had no knowledge or did not seek to aid in the distribution); *United States v. Harris,* 661 F.2d 138, 141 (10th Cir.1981) (when defendant, who was charged with the murder of his child, claimed that the death was accidental, the court could admit evidence of injuries suffered by the child on other occasions); *State v. Johns,* 301 Or. 535, 725 P.2d 312, 321–27 (1986) (en banc) (evidence that defendant assaulted his first wife with a gun was relevant to prove defendant's intent to kill current wife six years later when defendant acknowledged that his hand was on the gun when his current wife was shot with the gun, but claimed that the shooting was an accident).

▮ 11. Evidence of the two altered bingo cards was properly admissible because intent and knowledge were at issue in the trial. *See State v. Niewiadowski,* 120 N.M. 361, 364, 901 P.2d 779, 782 (Ct.App.), *cert. denied,* 120 N.M. 184, 899 P.2d 1138 (1995). Thus, the trial court's decision not to sever the trial of the two separate incidents was within its discretion. When evidence of each crime would have been admissible in separate trials, Defendant suffered no prejudice from the joinder that she would not have suffered in separate trials.

### Bingo Cards and Forgery

▮ 12. Defendant argues that because a bingo card is not the type of writing contemplated by the forgery statute, it lacks legal efficacy, and therefore presentation of an altered bingo card would not fall within the forgery statute. We disagree and note the comment of another court in a forgery case, facing a similar argument from defendant that, "No definition of forgery can be comprehensive enough to include all the crimes that may be committed by simple use of pen, paper and ink." *Muhammad v. Commonwealth,* 13 Va.App. 194, 409 S.E.2d 818, 821 (Va.Ct.App.1991).

▮ 13. The New Mexico statute does not define the type of writings that have legal efficacy and our case law has not previously dealt with the question of whether bingo cards are writings that can be the subject of a forgery. Our Supreme Court recently noted that forgery has been described as a crime aimed primarily at safeguarding confidence in the genuineness of documents relied upon in commercial and business activity. *State v. Baca,* 123 N.M. 124, 125, 934 P.2d 1053, 1054 (1997) (citing 2 Wayne R. LaFave & Austin W. Scott, Jr., *Substantive Criminal Law* § 8.7(j)(5) (1986)).

▮ 14. The statute defines a forged writing as one "purporting to have any legal efficacy." Section 30–16–10(A). "Legal efficacy" is defined in *State v. Cowley,* 79 N.M. 49, 52, 439 P.2d 567, 570 (Ct.App.1968), as "an instrument which upon its face could be made the foundation of liability" and "an instrument good and valid for the purpose for which it was created." The writing must be such that, if genuine, it would apparently operate to the legal prejudice of another. 36 Am.Jur.2d *Forgery* § 24 (1968).

▮ 15. The State presented testimony from the managers of the Eagles Club and the VFW Lodge that once a winning bingo card is presented, the operators must pay the announced prize to the card holder. The Bingo and Raffle Act, in its definition of games of chance, describes a bingo game as one "in which prizes are awarded on the basis of designated numbers or symbols on a card conforming to numbers or symbols selected at random." NMSA 1978, § 60–2B–3(M) (Repl.Pamp.1991). The bingo card is an integral part of the gambling transaction. According to the rules of the game, a winning card defines who is entitled to the prize and establishes an obligation on the part of the operators to the card holder. We conclude that because the bingo card creates a legally

enforceable obligation, it purports to have legal efficacy which can be the object of a forgery.

16. Defendant also argues that a bingo card does not create a legal liability for the game operators "upon its face," because the operators always verify any card presented to them before they pay prizes. In New Mexico, however, forgery is complete when the false instrument is issued or transferred with the requisite intent, regardless of its acceptance, or whether further steps are taken by the recipient to verify the writing. *State v. Ruffins*, 109 N.M. 668, 671, 789 P.2d 616, 619 (1990); *see State v. Garcia*, 26 N.M. 70, 72, 188 P. 1104, 1104 (1920). As in *Ruffins*, the act in this case is no less criminal because the forgery was detected before money changed hands.

## CONCLUSION

17. For the foregoing reasons, we affirm the trial court on both issues raised by Defendant.

18. IT IS SO ORDERED.

PICKARD and WECHSLER, JJ., concur.