2008-NMCA-058

183 P.3d 935

**STATE of New Mexico,
Plaintiff–Appellee,**

v.

**Eligio MARTINEZ, Defendant–Appellant.**

**No. 26,270.**

Court of Appeals of New Mexico.

Feb. 5, 2008.

Certiorari Denied, No. 30,964,
March 26, 2008.

Gary K. King, Attorney General, Ann M. Harvey, Assistant Attorney General, Santa Fe, NM, for Appellee.

John Bigelow, Chief Public Defender, Will O'Connell, Assistant Appellate Defender, Santa Fe, NM, for Appellant.

## OPINION

PICKARD, Judge.

{1} In this opinion, we hold that the act of signing an intake fingerprint card with an assumed name when being booked into jail constitutes forgery under the New Mexico forgery statute, NMSA 1978, § 30–16–10(A) (1963). Defendant was convicted of forgery for signing his cousin's name to a Farmington jail fingerprint card. He challenges the trial court's denial of his motion to dismiss, contending that the fingerprint card is not a document with "legal efficacy" as contemplated by the New Mexico forgery statute. We affirm.

## BACKGROUND

{2} The facts that give rise to the forgery charge against Defendant are not in dispute. On October 12, 2004, Defendant identified himself to a police officer using the name of his cousin. Because there was a warrant out for his cousin's arrest, Defendant was arrested and booked into the Farmington Jail. His cousin's name was written or typed on Defendant's fingerprint card, phone log, and prisoner possessions listing, and Defendant signed all three of these documents using this false name. When Defendant's true identity was ascertained at a subsequent domestic relations hearing, he was charged with three counts of forgery contrary to Section 30–16–10(A) and one count of concealing identity contrary to NMSA 1978, § 30–22–3 (1963). The State filed a *nolle prosequi* on two of the three forgery counts, proceeding solely on the forged fingerprint card. The concealing identity charge is not the subject of this appeal. The trial court denied Defendant's motion to dismiss the remaining forgery count, and Defendant entered a conditional guilty plea reserving his right to appeal the trial court's decision. This appeal followed.

## DISCUSSION

### Standard of Review

{3} Whether forgery charges can be predicated on Defendant's conduct is a question of statutory interpretation that we review de novo. *State v. Sandoval*, 2007–NMCA–103, ¶ 10, 142 N.M. 412, 166 P.3d 473, *cert. granted*, 2007–NMCERT–008, 142 N.M. 436, 166 P.3d 1090. Legal efficacy is a purely legal issue that we also afford de novo review. *Id.*

### Legal efficacy

#### 1. Legal efficacy of non-commercial documents

{4} Section 30–16–10(A) defines forgery as "falsely making or altering any signature to, or any part of, any writing purporting to have any legal efficacy with intent to injure or defraud." Because forgery is a crime "aimed primarily at safeguarding confidence in the genuineness of documents relied upon in commercial and business activity," *State v. Nguyen*, 1997–NMCA–037, ¶ 13, 123 N.M. 290, 939 P.2d 1098, the essential element of legal efficacy has frequently been addressed in New Mexico case law in the context of commercial and business transactions. *See, e.g., State v. Cearley*, 2004–NMCA–079, ¶ 15, 135 N.M. 710, 92 P.3d 1284 (holding that photocopies of altered non-carbon records of checks were not instruments purporting to have legal efficacy); *State v. Carbajal*, 2002–NMSC–019, ¶ 17, 132 N.M. 326, 48 P.3d 64 (holding that the defendant's alteration of a traveler's check by filling in the "pay to the order of" line did not have "legal effect" (emphasis omitted)). However, our courts have recognized that forgery is not confined to the commercial realm. *See, e.g., State v. Wasson*, 1998–NMCA–087, ¶ 8, 125 N.M. 656, 964 P.2d 820 (holding that traffic citations are instruments purporting to have legal efficacy); *Nguyen*, 1997–NMCA–037, ¶ 15, 123 N.M. 290, 939 P.2d 1098 (holding that bingo cards purport to have legal efficacy). In fact, this Court has held that "any document required by law to be filed or recorded or necessary or convenient to the discharge of a public official's duties" may be found to be legally efficacious. *Wasson*, 1998–NMCA–087, ¶ 7, 125 N.M. 656, 964 P.2d 820 (internal quotation marks and citation omitted).

■ {5} We hold today that the determination of whether a non-commercial document purports to have legal efficacy is a two-step inquiry. First, the court must determine whether the non-commercial document in question falls within the language of *Wasson.* If not, the document cannot provide the foundation for a forgery conviction. If the document meets *Wasson,* then the court must inquire whether the document purports to have legal efficacy under the two-pronged *Cowley* standard described below. *See State v. Cowley,* 79 N.M. 49, 439 P.2d 567 (Ct.App. 1968).

2. **Determining the legal efficacy of a non-commercial document is a two-step inquiry**

a. **The document must fall within the language of *Wasson***

■ {6} The trial court in this case ruled that because the falsely signed fingerprint card is a "document required by law to be filed or recorded or necessary or convenient to the discharge of a public official's duties," it is necessarily an instrument purporting to have legal efficacy. Although we agree with the trial court that a fingerprint card falls within the language of *Wasson,* we must clarify that no document can be deemed to have legal efficacy solely by virtue of the fact that it is "required by law to be filed or recorded or necessary or convenient to the discharge of a public official's duties." *See Wasson,* 1998–NMCA–087, ¶ 7, 125 N.M. 656, 964 P.2d 820 (internal quotation marks and citation omitted). Otherwise, the false signing of any public document could give rise to a forgery charge. This was clearly not the intent of the *Wasson* court.

{7} In *Wasson,* this Court considered the question of whether a traffic citation purports to have legal efficacy so as to give rise to a forgery conviction. *Id.* ¶¶ 7–9. In addressing this question, the Court noted that "[a]lthough forgeries often involve documents relied upon to establish financial obligations and entitlements in the conduct of private business, they also *may* involve 'any document required by law to be filed or recorded or necessary or convenient to the discharge of a public official's duties.'" *Id.* ¶ 7 (empha-

sis added) (quoting 4 Charles E. Torcia, *Wharton's Criminal Law* § 491, at 94 (15th ed.1996) (citation omitted)). The Court thus broadened the scope of documents that *may* be considered legally efficacious to include non-commercial instruments such as traffic citations. We cannot read *Wasson* to automatically confer legal efficacy on any document falling within its purview. We read the *Wasson* language merely to underscore the fact that a forgery conviction *may* arise from the false signing of a non-commercial document. *See* 1998–NMCA–087, ¶ 7, 125 N.M. 656, 964 P.2d 820. To the extent that this Court may have suggested otherwise in *Sandoval,* 2007–NMCA–103, ¶ 11, 142 N.M. 412, 166 P.3d 473 ("A document required by law to be filed or recorded or necessary or convenient to the discharge of a public official's duties *is also considered to be* legally efficacious." (emphasis added) (internal quotation marks and citation omitted)), we clarify that where a non-commercial document falls within the language of *Wasson,* only the first step of the legal efficacy inquiry is complete. Such a document *may* purport to have legal efficacy, but only if it also meets the *Cowley* requirements set forth later in this opinion.

{8} Turning to the case before us today, it is clear to us that a fingerprint card is both "required by law to be filed or recorded" and "necessary or convenient to the discharge of a public official's duties," and therefore falls within the language of *Wasson.* New Mexico law requires a person arrested for the commission of a criminal offense punishable by imprisonment for more than six months to give fingerprint impressions. NMSA 1978, § 29–3–8(A), (B) (2002) (requiring "the arresting peace officer or the jail to make fingerprint impressions prior to the person's release"). "At the time of fingerprinting, a state tracking number shall be assigned to the fingerprint records and the booking sheet." *Id.* Detention Officer Martinez testified at the motions hearing that the San Juan County Detention Center follows policies tracking these statutory requirements. He also testified that copies of the fingerprint card are filed internally and are disseminated to other law enforcement agencies. Accordingly, we hold today that an intake finger-

print card clearly falls within the language of *Wasson.*

### b. The document must meet the definition of legal efficacy set forth in *Cowley*

■ {9} We must now consider whether a fingerprint card has independent legal efficacy under common law. In *Cowley,* 79 N.M. at 52, 439 P.2d at 570, this Court defined a document with legal efficacy as "an instrument which upon its face could be made the foundation of liability. Also, an instrument good and valid for the purpose for which it was created." Subsequently, our courts have read *Cowley* to mean that for a document to purport to have legal efficacy both of these requirements must be met. *See, e.g., Wasson,* 1998–NMCA–087, ¶ 7, 125 N.M. 656, 964 P.2d 820 (defining the element of legal efficacy in terms of "an instrument which upon its face could be made the foundation of liability *and-* an instrument good and valid for the purpose for which it was created" (emphasis added) (internal quotation marks and citation omitted)). Our courts determine whether a non-commercial document satisfies *Cowley* by examining the nature of the document, any legal functions it may serve, and any legal obligations it may impose. *See, e.g., Sandoval,* 2007–NMCA–103, ¶¶ 14–18, 142 N.M. 412, 166 P.3d 473; *Wasson,* 1998–NMCA–087, ¶ 8, 125 N.M. 656, 964 P.2d 820; *Nguyen,* 1997–NMCA–037, ¶¶ 15–16, 123 N.M. 290, 939 P.2d 1098.

### i. A fingerprint card is an instrument which upon its face could be made the foundation of liability

{10} Defendant in our case contends that the fingerprint card he falsely signed cannot purport to have legal efficacy because it does not impose a legal obligation on anyone. We disagree. Once a fingerprint card has been prepared, the identifying information is submitted to local and national law enforcement agencies to assure correct identification of individuals for various purposes, including tracking the identities of individuals charged with crimes. By signing in his cousin's name, Defendant exposed his cousin to misidentification and possible criminal or other liability

in the future. Accordingly, we hold that the intake fingerprint card is an instrument which upon its face can be made the foundation of liability, thus satisfying the first *Cowley* prong. *See Cowley,* 79 N.M. at 52, 439 P.2d at 570. In so holding, we note that the question of whether Defendant's cousin suffered actual injury is irrelevant to our analysis. In New Mexico, "forgery is complete when the false instrument is issued or transferred with the requisite intent, regardless of its acceptance, or whether further steps are taken by the recipient to verify the writing." *Nguyen,* 1997–NMCA–037, ¶ 16, 123 N.M. 290, 939 P.2d 1098.

### ii. A fingerprint card is an instrument good and valid for the purpose for which it was created

{11} Defendant further argues that a fingerprint card lacks legal efficacy because it merely records evidence of speculative future value. Although we agree with Defendant that "[o]ur case law does not support an interpretation of the legal efficacy requirement that would expand forgery to encompass the falsification or alteration of any item with potential evidentiary value," *Cearley,* 2004–NMCA–079, ¶ 15, 135 N.M. 710, 92 P.3d 1284, we believe that Defendant significantly understates the legal effect of the document he falsely signed. Defendant's act not only victimized his cousin, it also victimized law enforcement officials and the general public. *See Wasson,* 1998–NMCA–087, ¶ 10, 125 N.M. 656, 964 P.2d 820 (noting that the forgery statute does not require that "the person whom the forger intends to defraud or injure be the same person whose name is forged"). To be of any value to law enforcement officers, a fingerprint card must be "good and valid" for the purpose for which it was created. Fingerprint cards are created and used for purposes of crime investigation and prevention. By completing his fingerprint card in his cousin's name, Defendant interfered with the effectuation of these purposes. "Confidence in the integrity of documents used by public officials for identification purposes is of the utmost importance. Obviously, adverse and serious consequences follow if the records or documents are incorrect because someone has undermined the

process by forging them." *State v. Johnson*, 855 S.W.2d 470, 473 (Mo.Ct.App.1993). For example,

> a suspect with no criminal history who falsely signs a fingerprint card might gain the advantage of having his prints recorded in the name of the other person, thus hampering his identification by the police in future investigations based solely upon the presence of his fingerprints at the scene of the crime.

*People v. Kirk*, 115 A.D.2d 758, 497 N.Y.S.2d 139, 140 (1985) (mem.), *aff'd*, 68 N.Y.2d 722, 506 N.Y.S.2d 333, 497 N.E.2d 700 (1986). Moreover,

> a criminal suspect gains a very real advantage when he signs the name of another to such a card, because he is thereby able to at least temporarily hide from the authorities his prior criminal history and his true identity. As other courts have noted, a false signature could reasonably lead the authorities to conclude that a suspect has no past criminal record and, as a consequence, he might be released on his own recognizance or upon very low bail.

*Kirk*, 497 N.Y.S.2d at 140. Accordingly, as an instrument good and valid for the purpose for which it was created, we hold that a fingerprint card meets the second prong of the *Cowley* standard for determining the legal efficacy of a non-commercial document under the New Mexico forgery statute. *See Cowley*, 79 N.M. at 52, 439 P.2d at 570.

### iii. Other jurisdictions

{12} We find support for our holding that a forgery conviction may be predicated upon the false signing of a fingerprint card in the case law of other jurisdictions. We are careful to note that the language of the statutes under which other jurisdictions have made this determination typically differs from that of our own.

{13} We also note in passing that many states proscribing the false signing of a fingerprint card include some variation on the *Wasson* language discussed above in their forgery statutes. *See, e.g., State v. Edwards*, 201 Conn. 125, 513 A.2d 669, 682 n. 10 (1986) (upholding conviction under state forgery statute's subsection proscribing the forgery

of "a public record or an instrument filed or required or authorized by law to be filed in or with a public office or public servant" (internal quotation marks and citation omitted)); *Reid v. Commw.*, 16 Va.App. 468, 431 S.E.2d 63, 64–65 (1993) (upholding conviction under state statute proscribing the forgery of a public record).

{14} That said, a number of jurisdictions have construed their forgery statutes to hold that a fingerprint card may be the subject of forgery. *See, e.g., Johnson*, 855 S.W.2d at 473 (upholding conviction because the word "writing" in the Missouri forgery statute includes a law enforcement document such as a fingerprint card); *Kirk*, 497 N.Y.S.2d at 140 (upholding conviction because fingerprint card is a "written instrument" under New York forgery statute); *State v. Peak*, 2005–Ohio–6422, ¶¶ 37–44, 2005 WL 3275604 (Ct. App. Dec. 2, 2005) (holding that false signing of fingerprint card was forgery because the defendant had requisite "purpose to defraud"); *Commw. v. Shamberger*, 2001 PA Super. 351, ¶¶ 13–15, 788 A.2d 408 (holding that false signing of fingerprint card was forgery because the defendant had requisite "intent to defraud or injure" (internal quotation marks and citation omitted)). *But see State v. Fisher*, 24 Kan.App.2d 103, 942 P.2d 49, 52 (1997) (declining to hold that false signing of fingerprint card deprived the state of a "property interest," as required by language of Kansas forgery statute).

## CONCLUSION

■ {15} We hold today that despite the fact that a fingerprint card is not a document intended for commercial or business purposes, it nonetheless (1) meets the *Wasson* requirement because it is "required by law to be filed or recorded or necessary or convenient to the discharge of a public official's duties" and (2) meets the dual-pronged *Cowley* standard because upon its face it can be made the foundation of liability and it is an instrument good and valid for the purpose for which it was created. Accordingly, we affirm.

{16} **IT IS SO ORDERED.**

WE CONCUR: CYNTHIA A. FRY, Judge, and IRA ROBINSON, Judge (concurring in result only).