2008-NMCA-075

185 P.3d 1081

**STATE of New Mexico, Plaintiff–Appellee,**

v.

**Tameka SCOTT, Defendant–Appellant.**

No. 26,883.

Court of Appeals of New Mexico.

March 14, 2008.

Certiorari Denied, No. 31,032, April 23, 2008.

Gary K. King, Attorney General, Ann M. Harvey, Assistant Attorney General, Santa Fe, NM, for Appellee.

John Bigelow, Chief Public Defender, J.K. Theodosia Johnson, Assistant Appellate Defender, Santa Fe, NM, for Appellant.

## OPINION

PICKARD, Judge.

{1} This is another case raising the issue of whether a particular document purports to have legal efficacy so that it can be made the foundation of a forgery conviction. At issue in this case are a doctor's note and an order for diagnostic testing that were used to create an excuse for Defendant's non-appearance at a certain court-ordered appointment. We hold that such documents have mere evidentiary value, as opposed to legal efficacy, and therefore our recent case of *State v. Cearley,* 2004–NMCA–079, 135 N.M. 710, 92 P.3d 1284 mandates a reversal.

## FACTS AND BACKGROUND

{2} Pursuant to municipal court proceedings, Defendant was ordered to undergo treatment as a condition of probation. The treatment provider notified the municipal court that Defendant failed to attend a scheduled appointment on April 20, 2004. The municipal court then ordered Defendant to appear to show cause as to why she did not comply with the condition of probation. At the show cause hearing, Defendant asserted that she had a doctor's appointment for her daughter, and the municipal court sentenced her to ninety days, which would be deferred if she provided the municipal court with proof of the doctor's appointment. The municipal court was provided with a letter from UNM Hospital, addressed "To Whom It May Concern" and stating that Defendant's daughter was under its care and was there on April 20, 2004. Also provided was a hospital form dated April 20, 2004, ordering certain tests for the daughter. According to Defendant's mother, the documents related to her own treatment, and she, not Defendant, altered them and provided them to the municipal court. According to the court clerk, Defendant provided the documents in person.

{3} At trial in district court and in her docketing statement, Defendant contended that the evidence was factually insufficient to convict her because it was her mother who actually committed the crime. After this Court proposed summary affirmance, Defendant filed a memorandum in opposition, contending for the first time that the documents were insufficient as a matter of law to prove a forgery because they did not purport to have legal efficacy. We reassigned the case to the general calendar, and Defendant's brief reiterates the arguments in the memorandum in opposition.

## DISCUSSION

### 1. Preservation

{4} The State initially contends that Defendant did not adequately preserve the issue raised on appeal because she did not give the district court an opportunity to rule on the issue. However, if the evidence is insufficient to legally sustain one of the elements of a crime, the error is fundamental and may be raised for the first time on appeal. *In re Gabriel M.*, 2002–NMCA–047, ¶ 9, 132 N.M. 124, 45 P.3d 64.

{5} The State also contends that we cannot reach Defendant's issue because she did not request the exhibits for the record on appeal and there is therefore an insufficient record on which to determine the issue. However, pursuant to the State's own motion, we supplemented the record with the exhibits, and the record, even if it was previously insufficient with only the description of the exhibits in the transcript, is currently sufficient on which to decide the issue on appeal.

### 2. Legal Efficacy

{6} The question of legal efficacy is a legal issue that we review de novo. *Cearley*, 2004–NMCA–079, ¶ 11, 135 N.M. 710, 92 P.3d 1284; *State v. Wasson*, 1998–NMCA–087, ¶ 6, 125 N.M. 656, 964 P.2d 820.

{7} We recently have had a spate of cases addressing the element of legal efficacy for forgery. Reviewing the facts and analyses in those cases shows that this case is most like those cases holding that the documents in question did not purport to have legal efficacy. Before reviewing those cases, we quote the pertinent statute and address the State's argument that the requirement of legal efficacy applies only to NMSA 1978, § 30–16–10(A) (1963), and not to Section 30–16–10(B). Subsection A defines forgery as "falsely making or altering any signature to, or any part of, any writing purporting to have any legal efficacy with intent to injure or defraud." Subsection B defines forgery as "knowingly issuing or transferring a forged writing with intent to injure or defraud." Violation of either subsection is a third degree felony. Although Defendant was charged with two violations of Subsection A, the case was submitted to the jury without objection by Defendant on one violation of Subsection B.

{8} When we read the statute as a whole and consider both subsections in relation to each other, *see Cobb v. State Canvassing Bd.*, 2006–NMSC–034, ¶ 34, 140 N.M. 77, 140 P.3d 498, as well as the general proposition that the crime of forgery is "aimed primarily at safeguarding confidence in the genuineness of documents relied upon in commercial and business activity," *State v. Nguyen*, 1997–NMCA–037, ¶ 1, 123 N.M. 290, 939 P.2d 1098, it is apparent to us that the forged writing described in Subsection B is the type of writing falsely made or altered in Subsection A, i.e., a writing purporting to have legal efficacy. This reading is also supported by the common understanding that "[a] writing or instrument, in order to constitute a forgery, must possess some apparent legal efficacy." 36 Am.Jur.2d Forgery § 28 (2001).

{9} The State nonetheless contends that forgery under Subsection B is a more serious crime and more likely to result in the harm the legislature was trying to prevent inasmuch as it involves the actual transfer of the writing, and not merely preparing it. This argument is not persuasive in light of the considerations mentioned above. In addition, while the committee commentaries to uniform jury instructions are not binding, we often do find them persuasive. *See State v. McCrary*, 100 N.M. 671, 673, 675 P.2d 120, 122 (1984). The structure of the uniform jury instructions on the two subsections of forgery, UJI 14–1643 NMRA and UJI 14–1644 NMRA, and the commentaries thereto indicate that legal efficacy is a question of law on which the jury need not be instructed under either subsection. Finally, we do not believe that the legislature intended that the transfer of any falsified writing, even as trivial as a parent's note to excuse a student from school, should qualify as a third degree felony. We now turn to the question of whether the documents in this case purport to have legal efficacy.

{10} Most recently, in *State v. Martinez*, 2008–NMCA–058, ¶¶ 7–8, 144 N.M. 50, 183 P.3d 935 (Ct.App.2008), we held that a fingerprint card was a document purporting to have legal efficacy because it met the requirement stated in *Wasson* that it was " 'required by law to be filed or recorded or

necessary or convenient to the discharge of a public official's duties'" and it also met the two-pronged standard set forth in *State v. Cowley*, 79 N.M. 49, 52, 439 P.2d 567, 570 (Ct.App.1968): that it could be made the foundation of liability on its face and that it was an instrument good and valid for the purpose for which it was created. *Martinez*, 2008-NMCA-058, ¶¶ 10–11, 144 N.M. 50, 183 P.3d 935. Statutes require fingerprint cards, and they are necessary or convenient to the discharge of public officials' duties. *Id.* ¶ 8. We further held that fingerprint cards could have legal consequences for the people they identify and that they are good and valid for the purposes they are created. *Id.* ¶¶ 10–11.

{11} In contrast to *Martinez*, we decided in *Cearley* that photocopies of non-carbon records of checks that were presented to opposing counsel during discovery were not instruments purporting to have legal efficacy and instead were items of mere potential evidentiary value. 2004–NMCA–079, ¶ 1, 135 N.M. 710, 92 P.3d 1284. Although the documents reflected that a legal obligation had already been paid, we held that the documents themselves did not meet the standards established by our cases. *Id.* ¶¶ 14–16.

{12} Between the *Cearley* and *Martinez* cases, we decided *State v. Sandoval*, 2007–NMCA–103, ¶ 13, 142 N.M. 412, 166 P.3d 473, *cert. granted*, 2007–NMCERT–008, 142 N.M. 436, 166 P.3d 1090, in which we held that certain documents required by federal law (an I–9 form required by employment law, a W–4 form required by tax law, and a resident alien card and social security card required for various federal purposes) did purport to have legal efficacy while an ordinary employment application did not. All of these cases followed from the previous cases of *State v. Carbajal*, 2002–NMSC–019, ¶¶ 15, 17, 132 N.M. 326, 48 P.3d 64 (holding that a traveler's check on which the defendant filled in his name on the "pay to the order of" line but that was not countersigned did not have legal efficacy); *State v. Torres*, 2000–NMCA–038, ¶ 10, 129 N.M. 51, 1 P.3d 433 (holding that INS and USPS receipts for immigration documents purported to have legal efficacy); *Wasson*, 1998–NMCA–087, ¶ 9, 125 N.M. 656, 964 P.2d 820 (holding that traffic citations are instruments purporting to have legal effi-

cacy); and *Nguyen*, 1997–NMCA–037, ¶ 15, 123 N.M. 290, 939 P.2d 1098 (holding that bingo cards purport to have legal efficacy).

{13} In comparison to the documents involved in the above cases, the doctor's note and order for tests, presented to the court as an excuse for missing a hearing, are most similar to the non-carbon records in *Cearley*. The State argues, however, that these documents can be good and valid for their own purposes. Specifically, it contends that the doctor's note "establishing that a patient is being treated ... and was present at a hospital on specific days provides a basis for releasing those involved in the care of the patient from other obligations and could also provide a basis for financial and other types of support." We do not understand these bases in the context of the legal requirements for forgery, and the State's argument has not enlightened us beyond claiming they are so. In our view, the doctor's note is more appropriately characterized as the type of document that merely has potential evidentiary value, as in *Cearley*.

{14} The order for testing presents a closer question. The State contends that the order authorizes medical tests that would otherwise not be performed and also authorizes their communication to specified medical personnel. Thus, the State contends that the order has legal efficacy because it was a "'good and valid'" instrument for official medical purposes. However, we believe that the State's argument carries the "good and valid" standard too far. Every document can be argued to be good and valid for some purpose, but it is only documents that purport to have "*legal* efficacy" that may be the foundation for forgery convictions. The State has not explained, nor can we explain, how the order for medical tests can be made the foundation of liability.

{15} Accordingly, we hold that the doctor's note and order for tests are not instruments purporting to have legal efficacy. They are no different in legal effect from the copies of the non-carbon checks in *Cearley* or the employment application in *Sandoval*.

## CONCLUSION

{16} We reverse Defendant's conviction for forgery and remand with instructions to discharge her from liability for that crime.

{17} **IT IS SO ORDERED.**

WE CONCUR: JAMES J. WECHSLER and MICHAEL E. VIGIL, Judges.